**DeBRY AND HILTON TRAVEL SERV-
ICES, INC., Plaintiff and Appellant,**

v.

**CAPITOL INTERNATIONAL AIRWAYS,
INC., Defendant and Respondent.**

**No. 15219.**

Supreme Court of Utah.

Aug. 10, 1978.

Clark W. Sessions, of Watkiss & Campbell, Salt Lake City, for plaintiff and appellant.

Philip R. Fishler, of Strong & Hanni, Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

Plaintiff appeals, and defendant cross-appeals; from a judgment on a jury verdict in a breach of contract action. The judgment of the trial court is affirmed. No costs awarded.

Plaintiff, a Utah corporation, hereinafter referred to as DeBry, or charterer, is engaged in all phases of the travel business. Defendant, a Tennessee corporation, hereinafter referred to as Capitol, is a charter airline. DeBry sells package tours to students. DeBry generally charters an aircraft for such a tour because a charter flight costs substantially less than a regularly scheduled airline flight. Under C.A.B. regulations, DeBry is considered an indirect carrier, and both parties are subject to the control and regulation of the C.A.B.

The subject matter of this action involves a student tour planned by DeBry; such a tour is called under C.A.B. regulations an I.T.C. (Inclusive Tour Charter). The C.A.B. requires a joint filing by the charter airline and the tour operator, fifteen days prior to any solicitation of the students for the tour. The joint filing by the two parties must include copies of the charter contract between the travel agent and the charter airline, the contract between the tour operator and the tour's participants, the tour operator's surety bond, and a depository agreement with a bank, the travel agent, and charter airline. Under another regulation of the C.A.B., every agreement to perform a charter trip is required to be in writing and signed by an authorized representative of the supplemental air carrier and the charterer.

In this matter, prior to the charter flight involved, DeBry had chartered approximately twenty-five flights from Capitol. These flights are frequently chartered one year in advance of the scheduled departure date.

On November 8, 1973, DeBry wrote a letter to Capitol, requesting charter bids for two student flights for 183 passengers. On November 27, 1973, Capitol sent DeBry a contract form which was completed except for two spaces at the bottom of the document. One space was for the signature of the representative of DeBry, and the other for the signature of a representative of Capitol. At the bottom of the contract the following was recited:

If this contract is not signed and returned with the full deposit indicated in the Schedule of Payments as indicated ten (10) days after issue, *the offer* of Charter Transportation, as indicated shall automatically expire. [Emphasis supplied.]

The following are the significant statements in the cover letter sent in conjunction with the contract:

Enclosed are your contracts as requested and confirmed in my telephone conversation with Sharon.

DCA/74/485 New York/London/New York $31,512.00 11/22/74 return 12/9/74 183 pax.

I am able to hold these dates only to Dec. 5th so please expedite their execution and return or I will not be able to hold the space.

Bob, I am going to have to get your Study Group or I.T.C. filing immediately or cancel those flights.

On November 30, 1973, DeBry sent a letter with the signed contracts to Capitol. In the letter DeBry authorized Capitol to transfer certain funds it owed to DeBry to cover the deposit required by the contract. DeBry further promised to send in the next few days solicitation material and the first draft of the I.T.C. filing.

Testimony at the trial established it is customary after the charterer has executed the charter contract, it is signed by a representative of Capitol, and a copy is returned to the charterer. A contract in this form was necessary for the joint I.T.C. filing with the C.A.B. Capitol neither signed the contract nor returned a copy to DeBry.

Entered into evidence were a number of letters from DeBry, requesting copies of the contracts. A letter dated January 4, 1974, from DeBry to Capitol, recited that sample copies of the preliminary announcement for student cruises, using Capitol were included. DeBry requested forms and instructions for the I.T.C. joint filing.

Capitol did not respond to DeBry's correspondence, nor did it return the funds which DeBry had authorized it to use as a

deposit for flight 485. (At a later date Capitol claimed a C.A.B. regulation prohibited the transfer, of the funds it held, to the deposit for the flight. The evidence indicated Capitol had previously transferred funds for DeBry; Capitol neither informed DeBry of the new regulation; nor did it return the money.)

In July 1974, DeBry initiated a declaratory judgment action to determine its rights under the contract for flight 485; subsequently, through an amended complaint damages for a breach of contract were sought, as well as punitive damages and attorney's fees; by reason of defendant's malicious conduct. The matter was submitted to the jury in the form of special interrogatories. The jury found the parties had entered into a valid and enforceable contract; that Capitol had breached the contract; that DeBry was damaged as a result of the breach; that Capitol was not excused from performance under the contract; that DeBry did not mitigate its damages, and DeBry's damages were $8,170.00. The jury further found DeBry was not entitled to an award of punitive damages.

Prior to the submission of the issues to the jury both parties moved for a directed verdict. After the verdict, defendant made a motion for a new trial, and plaintiff made a motion for an additur or in the alternative for a new trial on the issue of damages. All motions were denied, and judgment was entered in accordance with the verdict.

On appeal DeBry contends the trial court should have granted the additur. In fact, DeBry's motion for an additur, or for a new trial on the issue of damages, was a motion for a judgment notwithstanding the verdict. Prior to the submission of the issues to the jury, DeBry moved for a directed verdict on damages on the ground the evidence proved it had exercised reasonable care to mitigate the damages.

In reviewing a trial court's exercise of discretion upon a motion for a new trial, this court examines the record to determine whether the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust. If there be an evidentiary basis for the jury's decision then the denial of the new trial must be affirmed.

In reviewing a trial court's rulings pertaining to motions for a directed verdict or judgment n. o. v., this court reviews the evidence in the light most favorable to the nonmoving party and to afford him the benefit of all inferences which the evidence fairly supports. If reasonable persons could reach differing conclusions on the issue in controversy, a jury question exists and the motion should be denied.[1]

DeBry contends it should have been granted damages in the sum of $21,653.29, which was the difference between the contract price for the charter flight and the alternate transportation selected by it. The jury awarded DeBry as damages the sum of $8,170.00, which was the difference between the contract price for the charter flight and the price for which Saturn Airways would have chartered a flight on the days scheduled by DeBry for the tour.

The Chairman of the Board of DeBry testified that he started soliciting students for the tour in September 1974. He claims he started looking for another charter in July or August. He thought he wrote a list of ten or twelve charter and scheduled airlines, which he gave to his secretary to contact by telephone for reservations. He could not remember which airlines were included in the list. He testified he was nervous over the situation for the reason Capitol had neither responded to his letters nor returned the signed contracts so he could proceed with the requisite C.A.B. filing. He further testified other airlines had charters available, but not on the specific dates he needed. The only written evidence of DeBry's attempt to charter an aircraft was a letter written to Pan American on November 2, 1974. This carrier, although it had a charter available, declined the contract on the ground there was insufficient time to process the matter.

1. *McCloud v. Baum*, Utah, 569 P.2d 1125, 1127 (1977).

When DeBry could not locate a charter, it shopped for the cheapest tickets on a scheduled airline. DeBry's chairman testified the cheapest rate was a youth fare with Air Canada, departing from Toronto. All of the tourists were transported by chartered bus to Toronto except for nineteen adults, who did not qualify for the youth fare. The scheduled fare for adults from Cleveland to London was cheaper, and this alternative was selected for the adults on the tour.

Capitol adduced evidence indicating a chartered aircraft is a cheaper form of transportation than purchase of individual seats on a scheduled airline. The planned dates of the tour were during the slack season when more charter aircraft were available. To illustrate this point, Capitol presented evidence showing Saturn Airways, had a charter carrier available from the first week of August until the first week of October, for a flight on November 22 and a return on December 9, 1974.

When the foregoing evidence is reviewed in the light most favorable to Capitol (the nonmoving party) and Capitol is given the benefit of all inferences, which the evidence fairly supports, this court is compelled to conclude reasonable persons could reach different conclusions as to whether DeBry exercised reasonable care to avoid loss and minimize the resulting damages, from Capitol's breach of contract. Thus, the trial court's denial of DeBry's motions for a directed verdict and judgment n. o. v. must be sustained. Furthermore, since there is an evidentiary basis in the record to sustain the jury's verdict, the ruling of the trial court denying DeBry a new trial on the issue of damages must be sustained.

DeBry further contends the trial court's instruction to the jury concerning mitigation of damages was prejudicial and incorrect as a matter of law.

The challenged instruction contains five paragraphs, DeBry urges only one paragraph is misleading and erroneous. This one states:

> Therefore, if you find that the plaintiff could have found a cheaper or more economical way of flying the flight but that he failed to do so, then the plaintiff would not be entitled to claim the excess damages.

DeBry contends this paragraph places an absolute duty on it to find the *cheapest* alternate transportation or to be penalized for failure to do so.

DeBry's argument is predicated on the claim the instruction sets forth the plaintiff's duty in terms of the superlative—"*cheapest.*" In fact, plaintiff's duty is set forth in terms of the comparative—"*cheaper,*" "more economical."

In evaluating the instruction all of its provisions should be construed together. The first three paragraphs are consistent with the correct principle that a party must exercise reasonable care and diligence to avoid loss or to minimize resulting damages. To the extent the damages sustained are the result of the party's active and unreasonable enhancement thereof, or are due to the party's failure to exercise such care and diligence; he cannot recover.[2] The last paragraph provides the burden is upon the defaulting party to prove by a preponderance of the evidence plaintiff did not mitigate the damages.[3]

The challenged fourth paragraph coincides with the following principle:

> Where the evidence tends to support the conclusion that the plaintiff had reasonable opportunities to minimize his damages, the jury should be instructed that if it finds the plaintiff could have reasonably minimized his damages, it shall compute his damages as though the plaintiff had done so. . . .[4]

---

**2.** *Morrison v. Perry,* 104 Utah 151, 169, 140 P.2d 772 (1943).

**3.** *Pratt v. Board of Education,* Utah, 564 P.2d 294, 298 (1977).

**4.** 22 Am.Jur.2d, Damages, § 360, pp. 465–466; also see 8 Am.Jur.Pl. and Pr. Forms (Rev.), Form 334, p. 184.

██ DeBry's allegation of error concerning Instruction 28 cannot be sustained. DeBry further contends the trial court had a duty to instruct the jury as to the date when plaintiff's duty arose to mitigate the damages. DeBry urges such a date was either October 30, 1974, the date Capitol filed an answer in this action, denying there was a contract; or November 22, 1974, the date of departure of the tour, when Capitol didn't perform. A review of the record and DeBry's proposed instructions indicates DeBry did not urge such an instruction. Thus it cannot be considered for the first time on appeal.

Finally, DeBry argues the trial court erred in denying its claim for attorney's fees. By stipulation this issue was reserved by the parties and determined by the trial court after the jury had returned the verdict.

In its pleadings, DeBry prayed for punitive damages and attorney's fees by reason of Capitol's malicious conduct. The jury denied an award of punitive damages. Nevertheless, DeBry has so construed the evidence to substantiate its claim that Capitol's conduct indicated bad faith, which merits an award of attorney's fees to DeBry.

██ This court has consistently adhered to the general rule that attorney's fees are not recoverable as damages in either actions on contract or in torts, if there is no statutory or contractual authority for such fees.[5] One of the reasons for this rule is, to allow such fees to a plaintiff, where they are not allowed to a successful defendant, would give the plaintiff an unfair advantage.[6] Counsel fees, in matters such as the one at hand, can be considered as an element of damages only in those cases in which exemplary damages are or can be awarded.[7] In *Dahl v. Prince*,[8] this court reversed an award of attorney's fees where there was no basis for an award of punitive damages. Since DeBry was denied an award of punitive damages, the trial court properly denied counsel fees.

Capitol, in its cross-appeal, contends the negotiations between the parties did not result in a binding contract for the charter of flight 485. Capitol argues the cover letter and contract forms sent to DeBry did not constitute a binding offer; so that DeBry's execution and return of the contract form did not create a contract. Capitol claims, in effect, no binding contract could arise until one of its representatives affixed his signature to the appropriate space on the contract form. To sustain its argument Capitol cites a C.A.B. regulation which requires every agreement to perform a charter trip shall be in writing and signed by the authorized representative of the supplemental air carrier and the charterer prior to the operation of the flight. Capitol thus claims that under the regulations of the C.A.B. there can be no binding contract until both parties have signed. Capitol emphasizes the contract was required to be in this form before it would qualify as one of the documents required in the I.T.C. joint filing. In conjunction with the foregoing, Capitol argues, as a matter of law, there was no intent of the parties to form a binding contract when DeBry executed and returned the form, and the trial court should have granted Capitol's motion for a directed verdict.

██ A review of the C.A.B. regulations set forth by the parties in their respective briefs indicates merely the form in which certain documents must be filed for regulatory purposes. There emerges no clear intent to modify the law of contracts, and thus Capitol's contention there can be no binding contract, until both parties have signed in accordance with the C.A.B. regulations must fail.

---

5. *B & R Supply Company v. Bringhurst*, 28 Utah 2d 442, 503 P.2d 1216 (1972); *Blake v. Blake*, 17 Utah 2d 369, 412 P.2d 454 (1966).

6. *Erisman v. Overman*, 11 Utah 2d 258, 358 P.2d 85 (1961).

7. 22 Am.Jur.2d, Damages, § 167, p. 237.

8. 119 Utah 556, 230 P.2d 328 (1951).

Whether the parties to an alleged contract intended it to be effective prior to the signing by both parties of a written instrument containing its terms is a question of fact.[9]

A case in point is *Smith v. Onyx Oil & Chemical Company*.[10] After extensive negotiations an agreement was drafted by counsel for Onyx and sent to Smith. The letter sent with the agreement advised that after Smith had signed the contract, Onyx would send back a signed contract for Smith's files. Onyx never signed the contract. Subsequently, when Onyx repudiated the contract and Smith sued thereon, the issue was whether there was a contract. The court stated:

. . . On this subject there are two rules which can be stated without the slightest disagreement by anyone. If the parties intend not to be bound until a written memorial is executed by each, then they are not bound until that event takes place. On the other hand, although parties may intend to put their agreement in writing it does not follow they have not made a contract until the writing is completed and signed. These two rules are set out in Williston on Contracts, § 28 (Rev. ed., 1936), and in Corbin on Contracts, § 30 (1950). The emphasis of these two eminent writers is, it seems to us, inclined toward finding the formation of a contract prior to the signing of the document unless the parties pretty clearly show that such signing is a condition precedent to legal obligation. . . .

As the text writers point out, the question here is one of intention of the contracting parties. . . .

The court stated the intention of the parties is a fact; and, therefore, it sustained the finding of the trial court the parties intended to be bound prior to the time when both had signed the agreement.

The Restatement, Contracts, Sec. 25, provides:

If from a promise, or manifestation of intention, or from circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer.

Restatement, Contracts, Sec. 26, provides:

Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions as stated in § 25.

In the instant matter, the cover letter sent by Capitol to DeBry referred to the forms as contracts. The agreement itself contained a provision referring to it as an offer of Charter Transportation. Most significantly, there was no provision in the agreement specifying it would not be binding until a representative of Capitol signed it. The issue of the intention of the parties was submitted to the jury, which found a contract. The trial court did not err in its denial of Capitol's motions for a directed verdict and new trial.

Finally, Capitol contends DeBry breached the conditions set forth in the contract and thereby excused Capitol's performance. The conditions of the agreement provided the charterer (DeBry) agreed to comply with the regulations of the C.A.B. Capitol urges DeBry's failure to make the required I.T.C. filing excused Capitol from performance.

This argument is without merit, and the jury found adversely to Capitol. Capitol prevented DeBry from proceeding with this joint filing by failing to return a signed copy of the charter contract and refusing to respond to DeBry's letter concerning the filing. Furthermore, Condition 3 of the agreement provides:

---

**9.** 17 Am.Jur.2d, Contracts, § 71, p. 410.

**10.** (C.A. 3rd 1955) 218 F.2d 104, 50 A.L.R.2d 216.

. . . Charterer [DeBry] agrees to submit or provide any information requested by the Carrier [Capitol] or required by such Regulations or rules in order to establish or determine the charterworthiness of the Charter. In the event that the Charterer fails to submit such statements, passenger manifests and other information or documents or if, in the reasonable opinion of the carrier and its attorneys, the Charter is not charterworthy, the Carrier *may terminate and cancel this contract* without penalty *upon oral or written notice to the Charterer.* [Emphasis supplied.]

It was incumbent upon Capitol under its agreement to notify DeBry and cancel the contract, if DeBry had failed to comply with the C.A.B. regulations in regard to the tour. Capitol's silence was not a substitute for oral or written notice as required in the agreement drawn by Capitol.

WILKINS and HALL, JJ., concur.

CROCKETT, J., concurs in result.

ELLETT, C. J., dissents.