**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 2000**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MORGANROTH & MORGANROTH, a
Michigan partnership, and MAYER
MORGANROTH,

      Plaintiffs-Appellees.

v.

JOHN Z. DELOREAN, ZACHARY T.
DELOREAN, KATHRYN A.
DELOREAN, ZACHARY T.
DELOREAN as custodian for KATHRYN
A. DELOREAN, ECCLESIASTES 9:10-
11-12, INC. (formerly known as LOGAN
MANUFACTURING or LOGAN
MANUFACTURING COMPANY),

      Defendants-Appellants.

No. 98-4125

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 95-CV-75-B)**

---

James C. Swindler, Johnson & Hatch, P.C., Salt Lake City, UT, for Plaintiffs-Appellees.

M. Dayle Jeffs, Jeffs & Jeffs, P.C., Provo, Utah, for Defendants-Appellants.

---

Before **TACHA, HOLLOWAY**, and **BALDOCK**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

Plaintiffs/appellees Mayer Morganroth and his law firm, Morganroth and Morganroth (hereafter Morganroth), filed this diversity suit to set aside a transfer of property as fraudulent. Morganroth pleaded three theories for relief, but the only one which is relevant to this appeal is the theory that the transfer of the property should be set aside under Utah Code Ann. § 25-6-6(1) (1998). That statute deems a transfer fraudulent without requiring proof of actual intent to defraud when the transfer is not made for a reasonably equivalent value; the transferor is either insolvent at the time or rendered insolvent by the transfer; and the creditor's claim arose before the transfer.

The transfer of property at issue was from defendant-appellant Ecclesiastes 9:10-11-12, Inc. (Ecclesiastes) to Zachary T. DeLorean, individually and as custodian for Kathryn A. DeLorean (the DeLorean children). Defendant-appellant John Z. DeLorean (DeLorean) was the sole shareholder and director of Ecclesiastes; he is the father of the DeLorean children. Ecclesiastes and DeLorean were judgment debtors of Morganroth. Morganroth's instant suit sought to set aside Ecclesiastes' 1995 transfer of the Property to the DeLorean children so that Morganroth could then pursue the Property to satisfy Morganroth's judgment against Ecclesiastes.

The district court granted partial summary judgment to Morganroth and directed immediate entry of judgment under Fed. R. Civ. P. 54(b). Defendants filed a timely motion to amend the judgment under Fed. R. Civ. P. 59(e). The district court eventually entered an

order denying the defendants' motion and granting a motion to amend the judgment which had been made orally by Morganroth. On that same date the court entered an order granting Morganroth's motion for an award of attorney's fees and directed immediate entry of judgment under Fed. R. Civ. P. 54(b). Defendants then commenced this appeal.

As explained below, we first face several procedural issues in this appeal, including Morganroth's suggestion that the appeal had been mooted by the execution sale of the subject property. We conclude that the appeal is not moot and that none of the other procedural issues precludes our resolution of the merits of this appeal. On the merits, we hold that the district court did not err in granting partial summary judgment holding the 1995 transfer to the DeLorean children of the Property by Ecclesiastes should be set aside; the consideration given by the DeLorean children was not reasonably equivalent to the value of the subject property, and the transferor was insolvent at the time of the transfer. There were no genuine questions of material fact which would have precluded summary adjudication of these fundamental issues.

We also hold that the district court did not err in amending the judgment to make clear that all claims of the DeLorean children were invalid. Finally, we address the district court's award of attorney's fees to Morganroth and conclude that the fee award against the DeLorean children must be reversed. Because Ecclesiastes did not oppose the motion for attorney's fees in the district court, and because on appeal Ecclesiastes offers neither an explanation for this default nor even a request to be relieved from it, we affirm the award of attorney's fees

- 3 -

against it.

# I

This litigation arises from the tangled affairs of DeLorean.  Morganroth had performed legal services for DeLorean and affiliated entities for years, including representation in his high profile criminal and divorce cases.  In February 1993, Morganroth filed suit in federal district court in  Michigan against DeLorean and  Ecclesiastes, seeking recovery of almost $5 million in attorney's fees and alleging that he was fraudulently induced to continue in the representation by DeLorean's promises to pay the mounting bills.  After a three month trial, the jury returned a verdict for Morganroth for $5 million against DeLorean and $1.5 million against Ecclesiastes. *See Morganroth v. DeLorean*, 123 F.3d 374 (6th Cir. 1997).  Final judgment was entered on February 6, 1995. Morganroth then obtained leave of court to register the judgment in Utah.  This allegedly provided the motivation for the transfer at issue here.

The transfer was effected on April 23, 1995, about two months after Morganroth obtained the judgment in Michigan and six days after the Michigan court's order permitting Morganroth to register the Michigan judgment in Utah, but before the judgment had actually been filed in Utah.  The property in question (the Property) is a twenty acre tract on which was located an active manufacturing facility.  In the challenged conveyance, Ecclesiastes

purported to convey the Property to the DeLorean children, for a stated price of $1.2 million.[1] Payment was by a promissory note with a number of unusual terms favorable to the makers. In apparent anticipation of this litigation, the note provided that the buyers would deduct the full cost of litigation for the "confiscatory legal attack." Only payments of interest were to be made for twenty years, and those were to begin only upon conclusion of litigation over the title. The note obviously was not negotiable and was unsecured.

Defendants claimed, *inter alia*, that the Property already belonged to the DeLorean children as a result of one or more earlier conveyances. More background is necessary to put some of these issues in context. The entity now known as Ecclesiastes had previously been known as Logan Manufacturing Company and apparently conducted the manufacturing business on the Property. The Property itself was owned directly by John DeLorean until January 4, 1993, when he conveyed the Property to Logan Manufacturing Company. DeLorean was the sole owner of Logan Manufacturing too, holding it through one or more layers of corporate entities of which he was the sole shareholder.

In late 1992 John DeLorean and one Wallace reached an understanding on the sale of the assets of Logan Manufacturing (other than the Property itself), a transaction which closed in early January 1993. In preparation for consummation of this deal, Wallace formed at least

---

[1]As discussed further below, Zachary DeLorean appears herein individually and as "custodian" for his sister Kathryn. We have not been directed to any explanation in the record as to which court of which state may have appointed Zachary as Kathryn's custodian.

two corporate entities, LMC Holding and LMC Tenant. The former was the purchaser in the sale of assets, while the latter became the lessee of the Property. As part of the overall transaction, LMC Tenant entered into a lease of the Property, which included an option to buy the property for $2.5 million. The LMC entities are unrelated to DeLorean and are relevant primarily because of defendants' contentions that subsequent litigation with them over alleged breaches of the asset sale agreement and the lease diminished the value of the Property. After the asset sale, Logan Manufacturing changed its name to Ecclesiastes.

Apparently it was DeLorean's failure to pay his past bills to Morganroth out of the proceeds of this sale (and his decision to sue Morganroth for malpractice instead) which prompted Morganroth's suit against DeLorean and Ecclesiastes in Michigan, and which resulted in a judgment for Morganroth which underlies the present litigation. That Michigan suit was filed in late February 1993, about six weeks after the closing of the asset sale. *See Morganroth v. DeLorean*, 123 F.3d at 378.

In November 1993, while the Morganroth suit in Michigan was pending, Ecclesiastes (acting through its sole director, DeLorean) directed that all proceeds from the asset sale and all rental income from the Property were to be paid to Zachary and Kathryn. This was memorialized in a corporate minute, which also stated that the payments to the DeLorean children were to include "the proceeds of the Logan Real Estate sale, when effectuated."[2]

_____

[2]We have not been directed to anything in the record which explains the meaning of the phrase "the Logan Real Estate sale," but we assume, as the parties seem to do, that this refers to the Property.

II Aplt. App. 474. On the same day, DeLorean and his children purportedly reached a settlement and accounting of the family trust DeLorean had created years before. This settlement also purportedly established the right of the children to the proceeds of the asset sale and the rental income from the Property. *Id*. at 482-83.

Both of these documents, the Ecclesiastes corporate minute and the family trust settlement agreement, made reference to a court approved settlement agreement which had been entered in the bankruptcy proceedings of DeLorean Motor Company on May 28, 1987, by United States Bankruptcy Judge Graves of the Michigan court. Under that settlement agreement, after assets of the family trust had been sold and liabilities of DeLorean affiliates satisfied from the proceeds, any remaining proceeds were to be returned to the family trust. II Aplt. App. 453, 461-62.

## II

In the instant suit, Morganroth filed a motion for partial summary judgment, supported by massive documentation. The district judge did not issue an opinion thereon. He originally ruled from the bench after argument on the motion and made some explanatory remarks which were embodied in an order of Partial Summary Judgment. The order first sets out the elements of the claim that Morganroth would have to establish to be entitled to judgment setting aside the transfer of the Property from Ecclesiastes to the DeLorean children. The applicable Utah statute provides that:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if:

(a) the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . .; and
(b) the debtor was insolvent at the time or became insolvent as a result of the transfer . . . .

Utah Code Ann. § 25-6-6(1). At the argument on the motion, the district judge had observed that there was no dispute that Morganroth's claim had arisen before the challenged transfer. II Aplt. App. 674. Therefore, he reasoned that the issues to be determined were whether Ecclesiastes had received reasonably equivalent value and whether Ecclesiastes was either insolvent at the time of the transfer or rendered insolvent as a result of the transfer. The order states that there was no genuine issue of material fact that the transfer was made without a reasonably equivalent exchange and that there was no genuine issue of material fact that Ecclesiastes was insolvent at the time or was rendered insolvent by the transfer. The court found Morganroth's evidence admissible and denied the children's motion to strike the affidavit evidence.

In ruling from the bench, the district judge had found that the value of the Property was at least $1.2 million to $1.6 million, but that even if it were only $600,000 (the lowest figure suggested by the defendants), the value given was not reasonably equivalent. The judge said, "This was effectively a gift as the Court sees it." II Aplt. App. 674.

The DeLorean children filed a timely Rule 59(e) motion to amend the judgment. The gist of the motion was that the judgment was broader than warranted by the issues actually decided. The DeLorean children asserted that the only issues decided by the court had been

- 8 -

whether equivalent value had been given for the transfer of April 23, 1995, and whether the grantor was insolvent. The DeLorean children contended, however, that the judgment had gone beyond that to state that Morganroth's Michigan judgment was a lien senior to any right, title, and interest of any defendant. The aim of the motion to amend was to preserve the claims of the DeLorean children based on the earlier alleged conveyances mentioned above by the Ecclesiastes board of directors and the DeLorean family trust.

At oral argument on the Rule 59(e) motion, Morganroth made an unusual oral motion to amend the judgment to clarify that all claims of the children had been found to be invalid. The court ordered supplemental briefing since the defendants had no notice of this cross-motion. The court then entered an order granting Morganroth's motion to amend the judgment to cut off all claims of the DeLorean children based on the alleged earlier transfers. II Aplt. App. 802-04. The order stated that those issues were inextricably intertwined with the issue whether the April 1995 transfer had been for a reasonably equivalent value. This was so because the defendants had argued that little or no consideration had been necessary for the conveyance because the children actually were already the owners of the Property. The order listed several reasons for rejecting that contention: neither of the purported actions (the Ecclesiastes board of directors minutes and the settlement of the family trust) met the legal standards for conveyances of real property; the minutes of Ecclesiastes were not formally and properly executed by the corporation; and the purported consideration for these alleged conveyances was nonexistent.

Finally, the district court entered an order granting Morganroth's motion for attorney's fees against Ecclesiastes and the DeLorean children. The award seems to be based on the fraudulent nature of the transfer, as opposed to conduct of the litigation itself, and on the finding that the successful litigation would benefit all creditors of Ecclesiastes. The judge specifically stated that he was applying Utah law and cited a case from the Utah Supreme Court. Judgment was entered pursuant to Fed. R. Civ. P. 54(b) for attorney's fees and costs in the amount of $159,407.28.

## III

Before we reach the merits of this appeal, we must consider Morganroth's contentions that Kathryn DeLorean has not perfected her appeal to this court and that the appeal has become moot because the Property has been sold at an execution sale.

## A

The notice of appeal did not specifically name Kathryn individually, instead naming Zachary individually and as custodian for Kathryn. Morganroth contends that this is insufficient and thus Kathryn has not perfected an appeal. Under Fed. R. App. P. 3(c)(4) an appeal is not to be dismissed "for informality of form . . . of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." So, the question is whether Kathryn's intent to appeal is clear from the notice, when the notice named Zachary as custodian for Kathryn. We hold that this was sufficient to satisfy the requirement of the rule.

**B**

The facts relevant to the mootness issue are recited *infra* and are based on an affidavit of counsel appended to Morganroth's brief. Before addressing the mootness question Morganroth has raised, we must consider defendants' objections to the manner in which the issue is brought before us. Morganroth's affidavit describes events which occurred after the district court had entered judgment under Fed. R. Civ. P. 54(b). Defendants object that Morganroth is attempting to inject matters not in the record below. This is patently correct, but the suggestion that Morganroth's affidavit is improper is fatuous. Of course it is proper for a party to provide additional facts when that party has an objectively reasonable, good faith argument that subsequent events have rendered the controversy moot. Indeed, we depend on the parties for such information, and it is axiomatic that subsequent events will not be reflected in the district court record.

Nevertheless, defendants have moved to strike portions of Morganroth's brief on this basis and additionally on the ground that the brief exceeds the page limitation of Fed. R. App. P. 28(g) (superseded). Defendants also move to disqualify counsel for Morganroth for allegedly having breached ethical rules by remaining in the case as counsel when he has become a witness. These contentions are without merit, and we need only briefly explain our reasons for rejecting them.

As to the allegedly excessive size of Morganroth's brief, the brief contains a certificate by counsel of compliance with the current limitations of Fed. R. App. P.

32(a)(7)(B). The currently applicable rule became effective just days after defendants had served their opening brief, and defendants made the mistake of assuming that the older rule applicable to their brief was also applicable to Morganroth's brief. After having this error revealed to them, defendants filed a reply memorandum in support of their motion to strike, maintaining that Morganroth's brief was still in violation of the rules, to which they appended an affidavit describing their efforts to count the words in Morganroth's brief including the affidavit of counsel. We would have preferred that Morganroth file a separate motion setting out the grounds for the mootness argument (which also would have freed up space in the brief for more argument in response to defendants' issues), but we find nothing improper in Morganroth's submission.

Nor do we find merit in the contention that Morganroth's counsel should be disqualified for having become a witness. Defendants cite Rule 3.7 of the Utah Rules of Professional Conduct. We feel it obvious that this motion to disqualify counsel is *at best* premature. The rule prohibits acting as counsel *at trial* when the attorney is likely to be a *necessary* witness, unless the testimony relates to an uncontested issue. We are not a trial court, there seems little chance that the subject matter of counsel's affidavit will be the subject of a trial, and defendants have not contested any of the facts recited in the affidavit. This argument thus seems unfounded. However we decline Morganroth's suggestion that sanctions be imposed for this contention.

Finally, we come to the merits of the suggestion of mootness. Defendants did not

obtain a stay pending appeal. Before the district court amended the Rule 54(b) judgment to declare that all interests of all defendants in the property were terminated, Morganroth purchased the interests of DeLorean and Ecclesiastes in the Property at an execution sale, bidding $1.5 million against his judgment. Morganroth then formed an entity called GLP and assigned its rights in the Property to GLP. The sheriff then executed a deed to GLP. GLP has since entered into a contract to sell the property to an unrelated party. Morganroth contends that the sale could not be rescinded because GLP is a good faith purchaser for value and no effective relief could be given to defendants/appellants in these proceedings.

We conclude that this appeal is not moot. As discussed in part V, *infra*, this appeal includes a challenge by the DeLorean children to the district court's decision to amend the judgment to specify that all of their claims to the Property were invalid. Because the judicial sale involved only the interests of DeLorean and Ecclesiastes, we think it clear that the appeal is not moot as to the DeLorean children. We also conclude that this appeal is not moot as to DeLorean and Ecclesiastes under the specific facts and circumstances present. This is, as we have noted, an appeal from an entry of judgment on only one of Morganroth's claims. Our record indicates that Morganroth pleaded a claim for civil conspiracy in his original complaint and attempted to plead a similar claim in his proposed amended complaint, which the district court rejected as untimely. In his prayer for relief on the conspiracy claim, Morganroth sought punitive damages. Although we express no opinion on whether punitive damages could be awarded on Morganroth's civil conspiracy claim, we

note that a jury has awarded punitive damages in at least one Utah civil conspiracy case. *Estate of Pagan v. Cannon*, 746 P.2d 785 (Utah App. 1987), *cert. dismissed*, 771 P.2d 1032 (Utah 1989). (The availability of punitive damages *vel non* on a civil conspiracy claim was not an issue on appeal.)

The civil conspiracy claim which Morganroth has pleaded is based on the alleged agreement among DeLorean, the DeLorean children, Ecclesiastes, and defendant Roy Nesseth to accomplish the transfer of the property in hindrance of Morganroth's rights. Decisions favorable to defendants on issues presented in this appeal, specifically whether the transfer was made for a reasonably equivalent value and whether Ecclesiastes was insolvent at the time or immediately thereafter, would likely affect the civil conspiracy claim. Therefore, this appeal is not moot as to DeLorean and Ecclesiastes, and this analysis provides an additional basis for our conclusion that this appeal is not moot as to the DeLorean children.

## C

A further procedural hurdle remains. On August 23, 1999, counsel filed a notice of bankruptcy, informing our court that separate bankruptcy proceedings had been commenced against the DeLorean children. Moreover, at oral argument we were informed that DeLorean also is now in bankruptcy, although we have yet to receive formal notice of this event. The parties have responded to this court's show cause order regarding the effect of the automatic stay provision of 11 U.S.C. § 362.

- 14 -

Both sides assert that because the bankrupts are the appellants herein, this proceeding is not affected by the automatic stay. We agree. "[T]he automatic stay does not apply to the continued prosecution of actions by the trustee or debtor in possession. Those entities may continue or pursue litigation without leave of court (or release of stay under section 362)." *Autoskill, Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1486 (10th Cir. 1993); *accord Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1450 (10th Cir. 1997); *Chaussee v. Lyngholm (In re Lyngholm)*, 24 F.3d 89, 91-92 (10th Cir. 1994).

**IV**

Defendants contend that genuine issues of material fact precluded summary judgment for Morganroth on the issue of whether the transfer of the Property from Ecclesiastes to the DeLorean children was for an equivalent value. Defendants maintain that there were unresolved factual issues both as to the value of the Property and as to the value of the note given by the DeLorean children as consideration. They also argue that it was error to conclude on summary judgment that Ecclesiastes was insolvent. Our review of a grant of summary judgment is *de novo*.

We can quickly dispose of two contentions made by the defendants which challenge the procedure followed below. First, defendants argue that it was improper for Morganroth to have offered expert opinion evidence in affidavit form. Second, they contend that the district court failed to rule on their objections to the affidavits. The second point is easily rejected. The district court specifically addressed the objections, stating at the hearing that

- 15 -

Morganroth's evidence "is not objectionable in any arguable way." II Aplt. App. 674. In the written order, the district court stated that Morganroth's proffered evidence was "appropriate and admissible for purposes of a motion for summary judgment," and further that "the request of the DeLorean Children to strike such evidence is denied." *Id.* at 685. Defendants acknowledge this but complain nevertheless that their motion to strike was not given specific attention at the hearing on Morganroth's motion for summary judgment and that the court's ruling on admissibility was made only in the written order prepared by counsel for Morganroth. This does not affect our analysis of the issue. Although counsel drafted the order, the court made the order its own by signing and entering it.

As to the propriety of opinion evidence in the form of affidavits in support of a motion for summary judgment, defendants cite no authority prohibiting the practice, nor are we aware of any. Defendants complain that the experts were not subject to cross-examination, but Morganroth responds that defendants simply failed to take advantage of the opportunity to take the depositions of the experts. We find neither error nor abuse of discretion in the district court's decision to consider the affidavit evidence. Fed. R. Civ. P. 56(e).

*The value of the Property.* In support of his motion for summary judgment, Morganroth provided an affidavit from an appraiser, a Mr. Higgs, who had performed at least three different appraisals on the Property. Higgs's appraised values ranged from a high of $2,185,000 on December 9, 1993, to a low of $1,125,000 on February 12, 1995. Supp. App. 52-68. Defendants assert that the value of the property was not firmly established and

so could not properly have been a suitable issue for summary judgment. Morganroth insists, however, that the district judge properly took the evidence in the light most favorable to the defendants as the parties opposing summary judgment. Thus, the district court found that the value of the Property at the time of the transfer was between $1.2 million and $1.6 million, but that even if the value was much less than that,[3] the transfer nevertheless was clearly not for a reasonable equivalent. We agree with Morganroth that the district judge did not discuss the evidence in detail but he quite appropriately took the evidence in the light most favorable to the defendants.

*The consideration given for the transfer.* Morganroth's evidence included an expert opinion on the present value of the note executed by the DeLorean children in exchange for the Property. The expert reached the conclusion that the present value of the note was not more than $476,000.[4] Supp. App. 19-20, 40-51. Defendants contend that summary judgment could not properly have been based on this evidence because the credibility of the witness was critical and untested. We have already noted that defendants elected not to take the deposition of the expert and so they are in no position to complain about the absence of

---

[3]The court here made reference to a contention by the defendants that there had been an offer to purchase the Property for $600,000. We do not further address this point, merely noting that the evidence came far short of establishing the objective value of the Property.

[4]This estimate was based on the extremely generous assumption that the amount of litigation costs to be deducted under the terms of the note would be zero. If the costs were assumed to be $200,000, the present value of the note would be $397,000. Both of these estimates also assumed that litigation over the Property would be concluded by December 1997.

cross-examination. Moreover, defendants fail to specify any fact relied on by the expert which they controverted and likewise fail to allege any specific deficiency in the expert's reasoning and methodology. Consequently, defendants' argument is without force.

Indeed, we are convinced that the expert's opinion is generously slanted towards defendants' position. Little weight appears to have been given to several unfavorable risk factors (such as the DeLorean children's youth, limited education, limited work history, limited employment potential, and lack of information as to whether the children had other assets) which would obviously be of substantial concern to any neutral party assessing the value of the unsecured note of the DeLorean children.

*The statutory standard of reasonable equivalence.* Defendants contend that the transfer may not be held to have been fraudulent within the meaning of the statute because there are issues of fact as to whether the consideration given constituted a reasonable equivalent for the Property. Defendants say that "a reasonably equivalent" exchange under the statute need not be an exact equivalent. We see no indication, however, that the district court failed to apply the correct standard. Because we have found no error in the district court's conclusion that the value of the Property was at least $1.2 million, even taking the evidence in the light most favorable to the defendants, we can find no error in the conclusion that the unsecured note in the face amount of $1.2 million was not a reasonable equivalent. As we have already pointed out, defendants offer no specific criticism of the methods and assumptions used by Morganroth's expert in calculating the present value of the note. Thus,

we find that defendants' contentions are without foundation. Viewing the evidence in the light most favorable to defendants, we agree with the trial court that there is no basis for finding that the unsecured note represented reasonably equivalent value for the transfer of the Property.

Underlying some of these interrelated arguments advanced by defendants is a contention that the litigation with the tenant reduced the value of the Property at the time of the transfer to something less than that of Mr. Higgs's appraisal of February 12, 1995. However, this appraisal expressly took into account the adversarial relationship with the tenant and discounted the appraised value accordingly. Supp. App. 66-68. Defendants fail to show that there was any *evidence* submitted to the district court to support their vague suggestions that the reduction was not sufficient. We note also that the appraisal was done on behalf of Logan Manufacturing (the former name of Ecclesiastes) and presumably at the direction of DeLorean, its sole director.

*Insolvency of Ecclesiastes.* Defendants contend that the district court overlooked their evidence concerning a claim by Ecclesiastes against Wallace in the amount of $14 million under the contract for the sale of the assets of Logan Manufacturing.[5] Defendants acknowledge that this debt is disputed but contend that the dispute merely dramatizes the difficulty in assessing the value of the Property under all of the existing circumstances.

---

[5]The party obligated under that contract would presumably be LMC Holding rather than Wallace personally, but we need not attempt to resolve this discrepancy.

Defendants' evidence is not helpful to their argument. The evidentiary contention from the district court filings referenced in their brief is that Ecclesiastes had previously assigned its claims against the LMC entities to the DeLorean children. II Aplt. App. 563-64. On the issue of the solvency *vel non* of Ecclesiastes, it hardly matters then whether the LMC companies have failed to live up to all of their contractual duties, as defendants allege, because any claim against those entities is no longer an asset of Ecclesiastes, under its own evidence and allegations.

Apart from the assertion about the alleged $14 million debt from the LMC companies, defendants again fail to challenge any of the facts relied upon or any of the methods employed by the expert whose affidavit Morganroth submitted to show that Ecclesiastes was hopelessly insolvent at the time of the transfer. Thus, defendants fail to show any error in the district court's finding that Ecclesiastes was either insolvent at the time or, at best, was rendered insolvent by the transfer.

In sum, the summary judgment order properly satisfied both of the requirements of Utah Code Ann. § 25-6-6 to show a fraudulent transfer of the Property - that the transfer of the Property was not made for a reasonably equivalent value and that at the time of the transfer, Ecclesiastes was insolvent or was rendered insolvent by the transfer.

V

Defendants contend that the district court erred in granting Morganroth's oral motion to amend the judgment and in denying the DeLorean children's timely filed motion to amend

the judgment under Fed. R. Civ. P. 59(e).  We review the district court's rulings only for an abuse of discretion.  *See Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).  Both motions raised issues concerning the purported transfers of the Property to the DeLorean children in 1993 by means of the Ecclesiastes corporate board minute and the settlement of the DeLorean family trust, as described in Part I, *supra*.  The DeLorean children's theory appears to be that by the 1993 transfers, they already owned the Property and the judgment should have been amended to preserve their ability to pursue that claim.

**A**

In their memorandum in support of their motion to amend the judgment, the DeLorean children cited *Varley v. Tampax, Inc.*, 855 F.2d 696 (10th Cir. 1988), for the proposition that a timely filed motion to amend "gives the District Court power and jurisdiction to amend the judgment for any reason."  II Aplt. App. 695.  Now they complain because the district court acted in accordance with this authority.  As recited *supra*, Morganroth did not file a written motion to amend within the time prescribed by Rule 59; instead, he made an oral motion much later at the hearing on the DeLorean children's motion.  The DeLorean children now contend that Morganroth's motion was untimely and defective because it was not made in writing.

The DeLorean children's argument is foreclosed by the very authority which they cited to the district court.  In *Varley*, a disappointed litigant asked for certain relief in its timely filed Rule 59(e) motion and received an extension of time in which to file a brief

supporting the motion. In the interim, the litigant apparently thought of a way to a better outcome and asked the district court for more relief than it had sought in its motion. On appeal, this court held that the district court had abused its discretion by not affording the greater relief. Thus, it is quite clear that, as the DeLorean children originally asserted, a timely filed Rule 59 motion invests the district court with the power to amend the judgment for any reason. *Varley*, 855 F.2d at 699. The DeLorean children's present argument to the contrary is untenable.

We note also that the district court could have reached the same result without granting Morganroth's motion *per se*; the same substantive alteration of the judgment would have been proper in the course of denying the motion by the DeLorean children, which we discuss *infra*. This fact demonstrates the lack of merit to the argument that the district court committed some procedural error. We have considered additional arguments on this point made by defendants in their brief and find them unpersuasive.

In sum, we find no procedural error by the district court in entertaining Morganroth's motion to amend the judgment. We further hold that the judge did not abuse his discretion in granting the motion, as we explain *infra* in reviewing defendants' claim that their motion to amend should have been granted. Because the defendants' motion to amend raised the same issues as Morganroth's motion to amend, albeit from the opposite perspective, our analysis is the same for the merits of the court's rulings on both motions.

**B**

- 22 -

In contending that their motion to amend the judgment should have been granted, the DeLorean children first raise another procedural point. They assert that their motion to amend the judgment was intended only to limit the judgment to the issues raised by the pleadings, which of course centered on the April 23, 1995, transfer of the Property. The DeLorean children contend that the district court's judgment had gone beyond the issues raised by the pleadings by stating that the judgment lien created by the registration in Utah of Morganroth's Michigan judgment was "paramount and senior to any lien, right, title or interest of any defendant named in this action," II Aplt. App. 687, and the DeLorean children asked the district court to delete this quoted language or at least the "any defendant named" portion and substitute DeLorean and Ecclesiastes. The "concern," as explained by counsel at the hearing on the children's motion, was "that the wording . . . precludes or may preclude . . . the children from asserting their rights pursuant to the action of the board of directors [of Ecclesiastes] in 1993 . . . ." II Aplt. App. 760.

Morganroth had moved to amend his complaint to challenge the children's rights under the alleged 1993 conveyances, but the district court had denied the motion to amend the complaint because it was untimely, the DeLorean children aver. Thus, they contend that the amendment of the judgment allowed Morganroth to accomplish indirectly what he could not properly accomplish directly – effectively amend his complaint to attack the 1993 transactions.

This contention that the original judgment went beyond the issues raised by the

- 23 -

pleadings rings very hollow. In the next paragraph of their brief after making this contention, defendants say: "Throughout their pleadings in the lower court, the DeLorean Children argued that the transfer had taken place before the plaintiffs' claim arose. If the property was indeed transferred before Morganroth's claim arose, then summary judgment, under [Utah Code Ann.] § 25-6-6, is improper." Appellants' Opening Brief at 41-42. In addition, the DeLorean children specifically raised the issue of whether the Property had been transferred to them in 1993 in their response to Morganroth's motion for summary judgment in the district court. II Aplt. App. 426-28, 441-42. The issue was also raised in a separate memorandum in opposition to Morganroth's motion for summary judgment filed by Ecclesiastes. *Id*. at 553-54. Moreover, Morganroth's complaint included a prayer for judgment in exactly the same words as were ultimately used in the judgment. I Aplt. App. 9. Thus, we conclude that there is no merit to the contention that the original judgment went beyond the issues properly before the district court.

## C

The DeLorean children further argue that the district court made substantive errors in holding that the purported 1993 transfers did not meet the legal standards for a conveyance of an interest in real property. The district judge had stated at the hearing on Morganroth's motion for summary judgment that the claims based on the purported 1993 transfers were not valid, ruling that the 1987 order of the Michigan bankruptcy judge "is not pertinent in this case. Its conditions are simply not met." II Aplt. App. 675. The judge went on to explain

the reasons for his conclusion. First, he noted that the bankruptcy settlement order dealt only with assets of the DeLorean Family Trust and that defendants had submitted no evidence to show that the Property had ever been held in the trust. Second, he noted that the settlement order dealt only with any proceeds from sale of the Property, not purporting to authorize a conveyance of the Property, and concluded that defendants had submitted no evidence that there had been a sale of the Property. Further, the district judge observed that the Michigan bankruptcy settlement order approved payment of proceeds to the trust, not directly to the DeLorean children, and then only if all debts had first been satisfied. The judge found that no evidence had been submitted to show that the condition of payment of debts had been made. *Id.* at 675-76.

In the written order granting Morganroth's motion to amend the judgment, the district judge cited additional reasons for concluding that the DeLorean children had failed to establish that the Property had been conveyed to them in 1993. The judge held that the Ecclesiastes corporate minute was insufficient as a matter of law to convey an interest in real property, and he held the same as to the purported settlement of the DeLorean family trust matters. He also found that the corporate minute had not been executed by Ecclesiastes. Finally, he referred to the findings and conclusions he had made at the hearing that the bankruptcy settlement order did not support defendants' claims. II Aplt. App. 803-04.

On appeal defendants argue that both the corporate minute and the family trust settlement agreement were legally sufficient to convey the Property. (Defendants offer no

- 25 -

explanation for how two different entities could convey the Property on the same date, when there has never been an allegation that they were joint owners.) They assert that in the absence of a deed, Utah law recognizes that other documents may suffice to convey an interest in real property if the document or documents specify "the grantor, the grantee, and the interest granted or a description of the boundaries in a manner sufficient to construe the instrument as a conveyance of an interest in land." *Rocky Mountain Energy v. Tax Commission*, 852 P.2d 284, 286 (Utah 1993). Defendants focus on the use of the disjunctive "or" in the quoted passage and urge that the document need not describe the boundaries of the real property if the interest granted is adequately described. They then invoke the presumption that a conveyance is of the fee simple interest unless the intent to convey a lesser interest is apparent. Utah Code Ann. § 57-1-3.

We agree with the district court that neither of the documents relied on was legally effective to convey an interest in real property. Neither document evinces the present intent to convey an interest in the land. The Ecclesiastes corporate minute declares that "proceeds of the Logan Real Estate sale, when effectuated" should be paid to the DeLorean children. II Aplt. App. 474. The terms of the purported settlement of the family trust are less definite than the corporate minute. Under a heading "Payment Agreed Herein," the trust settlement document listed "LMC Real Estate, Net Leased" with a valuation of $2 million. Like the Ecclesiastes corporate minute, this appears to be, at most, an expression of intention to pay the proceeds of some future sale of the Property, with no indication of when a sale might

occur.

We hold that these documents did not suffice to transfer an interest in the Property as they simply lack any terms of conveyance or any other language evincing an intent to convey an interest in the Property. *See Warburton v. Virginia Beach Fed. Sav. & Loan*, 899 P.2d 779, 781 (Utah App. 1995) ("a real property interest may be transferred through other documents and memoranda revealing an intent to transfer an interest in property"); *see also Lucas v. Smith*, 383 S.W.2d 513, 515 (Mo. 1964) (deed must "contain some operative words of grant signifying a present intent to transfer or pass an interest in the land"). Thus since the 1993 instruments did not transfer the Property to the DeLorean children, their theory (that they owned the Property despite the finding that the 1995 transfer was fraudulent) fails.

## VI

Finally, defendants contest the district court's award of attorney's fees to Morganroth. We conclude that the judgment for attorney's fees against the DeLorean children must be reversed, while the attorney's fee award against Ecclesiastes will be affirmed.

## A

At the hearing on the motion to amend the judgment and the motion for attorney's fees, the district judge explained his reasoning as follows:

> I am going to change my mind on the attorney's fees. The attorney's fees motion is granted as to Ecclesiastes and as to the children. [Counsel] reminded me of some of the points I had forgotten . . . and I think [counsel] is right, I think this is just exactly the kind of case where a court better order attorney's fees. Based on everything I have seen in this case it is precisely the kind of case in which attorney's fees should be awarded. *That is not by way*

- 27 -

*of sanction for using the legal process . . . but . . . in this particular situation where the Court has seen the actions of the defendants as being obstructive, destructive, and without any good faith, that would equate [,] I suppose [,] to a finding of bad faith. Mr. DeLorean and his cohorts, those who he controls and can direct, have done everything possible to avoid honoring just debts. I am not going to give a blanket disapproval of everything they have ever done in a court of law, but only with this particular matter with respect to this particular transfer I can find no valid legal basis for doing what they did.*

II Aplt. App. 773-74 (emphasis added).

The written order submitted by counsel and signed by the judge recites that the motion was based on the court's "inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity pursuant to *Stewart v. Utah Public Service Comm'n*, 885 P.2d 759, 782 (Utah 1994)[,] and similar Utah cases." II Aplt. App. at 806. The court went on to hold that fees could be awarded "if the court finds that the requirements of applicable Utah case law are satisfied." Referring again to *Stewart*, the judge said that fees may be awarded "where a party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* Further, the court explained that its decision was based on its review of the evidence submitted, finding "that *the actions of the defendants in arranging, documenting and carrying out the transfer of the Property to the DeLorean Children were in bad faith* and without any valid legal basis, but were calculated to avoid honoring just debts." *Id.* at 807 (emphasis added). Additionally, the court made this finding: "This action to set aside the fraudulent transfer of the Property may benefit not only plaintiffs but the entire class of creditors of Ecclesiastes." *Id.*

**B**

- 28 -

"Although generally we review a district court's award of attorneys' fees for an abuse of discretion, we review its application of the legal principles underlying the award *de novo*." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997). As shown by the excerpts we have quoted, the district court made clear that the award was based on the court's inherent power. It is well settled that the federal courts have such inherent power to sanction parties for bad faith conduct *in litigation*. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Here, however, the district judge expressly stated that the award of attorney's fees was *not* based on the conduct of the litigation. Instead, the district court made it very clear that the award was based on the underlying previous conduct which gave rise to the cause of action, as shown in the quotation above from the district court's order. We have held that this is beyond the district court's inherent powers in federal litigation. *Towerridge*, 111 F.3d at 765-69. We noted in that case that other circuits are in agreement with that holding. *Id*. at 766-67 & n.5.

*Towerridge* may not be controlling here, however, because the district judge expressly relied on state law to support his ruling. In diversity cases a federal court's inherent power to award fees may be controlled by state law if the state's substantive policy so dictates. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991); *Alyeska Pipeline Co. v. Wilderness Society*, 421 U. S. 240, 259 n. 31 (1975). State law, if any, authorizing an award of attorney's fees as a sanction for conduct occurring prior to litigation activity at least arguably would reflect substantive state policy and so be controlling in diversity cases. *See Chambers*,

501 U.S. at 74 (Kennedy, J., dissenting).[6] We have already noted that this award could not be sustained under *Towerridge*, if federal law governed. Because, as explained *infra*, we conclude that Utah law does not authorize the award of fees in this case either, we need not decide which law applies.

Assuming *arguendo* that state law would govern this issue, our duty under *Salve Regina College v. Russell*, 499 U.S. 225 (1991), is to review *de novo* the district court's interpretation of state law. Utah generally follows the American rule: "The general rule in Utah, and the traditional American rule, subject to certain exceptions, is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award . . . ." *Stewart v. Utah Public Service Comm'n*, 885 P.2d 759, 782 (Utah 1994).[7] *Stewart* noted the bad faith exception but did not discuss it in detail. Despite rather extensive research, we have found no Utah case imposing attorney's fees in the exercise of the inherent powers of the judiciary based on bad faith conduct not related to the prosecuting or defending

---

[6]The majority opinion in *Chambers* did not disagree with Justice Kennedy on this point. Rather, in that case the Court divided over whether the district court's award of attorney's fees for bad faith conduct was based partially on conduct preceding the litigation. The majority found that it was based only on bad faith conduct during the litigation, 501 U.S. 54 & n.16, and so did not reach the point Justice Kennedy addressed in his dissent. *See Towerridge*, 111 F.3d at 766.

[7]Morganroth does not allege that he is a party to any contract with the DeLorean children, nor does he contend that the Utah statute on which his claim is based provides for an award of attorney's fees. Our research indicates that the statute does not authorize an attorney's fee award. *See Selvage v. J.J. Johnson & Assoc.*, 910 P.2d 1252, 1263-64 (Utah App. 1996).

of the case, nor have we found authority expressly forbidding such an award.[8] We thus must

predict how the Utah Supreme Court would rule on this point. We conclude that Utah likely

would agree with the weight of federal authority in our court and elsewhere that the court's

inherent power to award attorney's fees for bad faith conduct is limited to instances of such

bad faith *relating to the litigation process itself*. In *Stewart*, the only authority cited by the

district court to support the award in this case, the Utah Supreme Court merely noted the

existence of the bad faith exception to the American rule, and cited a leading treatise on

*federal* practice.

As noted in *Towerridge*, the clear majority view in federal courts is that the inherent

power to award fees is limited to bad faith conduct in the litigation.[9] *See also* 10 James Wm.

Moore & Fern M. Smith, *Moore's Federal Practice* § 54.171[2][c][ii] (3d ed. 1999); 1 Mary

Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 4.01[2] (1999). Among

the reasons given for the limitation is that a contrary rule would constitute a substantial

abridgment of the American rule, to which the Utah courts have demonstrated strong

---

[8]We have found some Utah cases which suggest, although they do not hold, that attorney's fees may comprise an element of an award of punitive damages. *See, e.g., DeBry & Hilton Travel Services, Inc. v. Capitol International Airways, Inc.*, 583 P.2d 1181, 1185 (Utah 1978) (attorney's fees were properly denied where no punitive damages had been awarded in breach of contract action). Clearly these cases provide no support for the fee award in the instant case, where no punitive damages have been awarded.

[9]In *Towerridge,* we said that we did not decide whether a court can *consider* prelitigation bad faith conduct in deciding whether to award attorney's fees and that "we merely hold the award of fees may not be premised *solely* upon prelitigation-abusive conduct." 111 F.3d at 767 n. 6 (emphasis in original).

allegiance. Thus, it has been noted that "[a] defendant found liable for fraud, for instance, would automatically be guilty of bad faith with respect to the underlying cause of action, thus abrogating the American Rule in all successful fraud actions. Such complete abrogation is not the purpose of the bad faith exception." 10 *Moore's Federal Practice* § 54.171[2][c][ii] at p. 54-266. We conclude that Utah would follow the general rule, rather than substantially abridge the American rule by permitting its courts to award attorney's fees for bad faith conduct not related to the litigation process itself.

Thus the prelitigation conduct alone, as cited by the district judge, cannot support the award of attorney's fees made against the defendants.

## C

We turn finally to the district judge's holding that the fee award was justified on the basis that Morganroth's action was a benefit to "the entire class of creditors of Ecclesiastes." The principle invoked by the district judge is often referred to as the "common fund" exception to the American rule. Like the bad faith exception, it is founded on the court's inherent power derived from its historic equity jurisdiction. *See Chambers*, 501 U.S. at 45. Consequently, our earlier comments and Justice Kennedy's analysis in the *Chambers* dissent point to the conclusion that a fee award on this basis would be a matter of substantive law, and accordingly that state law should apply in diversity cases. Once again we need not resolve the issue, however, because we discern no significant difference in federal law and Utah law on the common fund doctrine. *Compare Chambers*, 501 U.S. at 45, *with Stewart*

*v. Utah Public Service Comm'n*, 885 P.2d 759, 782-83 (Utah 1994). We conclude that the fee award in this case cannot be based on this doctrine because there is no evidence in this record of the creation of a common fund.

The district court made no findings to support the award of fees under the common fund doctrine, nor did the judge explain his reasoning. We note the following general principle regarding the common fund theory:

> The common fund exception applies only if a fee assessment against the fund would serve to spread the cost of the litigation among the fund beneficiaries. The theory of the exception is that because the fund beneficiaries have benefitted from the action, they should be required to share in the action's expense.
>
> The beneficiaries of the fund must, therefore, be readily identifiable, so that the fees may be charged against their portion of the fund with some exactitude. In the absence of such identifiable beneficiaries . . . the common fund exception is inapplicable.

10 *Moore's Federal Practice* § 54.171[2][a][iii] at pp. 54-253 to 54-254 (3d ed. 1999). We have previously held, in accordance with the views of the authors of the treatise, that the common fund doctrine requires identifiable beneficiaries and circumstances that permit proportionate sharing among the beneficiaries "'with some exactitude.'" *Jordan v. Heckler*, 744 F.2d 1397, 1400 (10th Cir. 1984) (quoting *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 264 n.39 (1975)). No such circumstances are shown here. Moreover, it is inherent in the concept of the common fund doctrine that the attorney's fees come out of the recovery; therefore, "[t]he common fund theory does not impose additional liability on the losing defendant." *Knight v. United States*, 982 F.2d 1573, 1579 (Fed. Cir. 1993). The fee

award in the instant case clearly *does* impose additional liability on the losing parties.

Utah law is in accord. In *Stewart*, a complex case involving challenges to utility regulations, the court directed that fees be awarded out of the common fund *if* proceedings on remand resulted in the creation of such a fund; if no fund were created, the defendant commission was ordered to award fees under the private attorney general theory. *Stewart*, 855 P.2d at 783. There has been no suggestion that the instant case is an appropriate one for application of that doctrine.

In the instant case, there simply is no fund from which the fees may be awarded. Morganroth's recovery of the Property benefits only him. Any indirect benefit to other creditors is speculative. Indeed, it is likely that there is no benefit at all. Morganroth's evidence as to the insolvency of Ecclesiastes was that the company's only asset, other than the Property, was a contingent claim against the LMC companies.

Even if there were other assets, however, the dispositive fact is that this action did not result in the creation of a fund from which others would benefit. Thus, we find no legal basis on which the award of attorney's fees can be sustained. We therefore hold that the district court abused its discretion in making the award, and we reverse the judgment for attorney's fees against the DeLorean children.

**D**

As to defendant Ecclesiastes, the district court based the award of attorney's fees on the additional ground that Ecclesiastes had neither responded to the motion for attorney's

- 34 -

fees nor appeared at the hearing. II Aplt. App. 806 (citing Local Rule 7-1(d)).[10] No argument been made on appeal as to why the award against Ecclesiastes should not be affirmed on that basis. We therefore deem the issue forfeited as to Ecclesiastes and affirm the attorney's fee award against it.

### Conclusion

In sum, the judgment of the district court holding the transfer at issue to be fraudulent within the meaning of Utah Code Ann. § 25-6-6(1) is **affirmed.** The judgment for attorney's fees against the DeLorean children is **reversed.** The judgment for attorney's fees against Ecclesiastes is **affirmed**.

---

[10]Apparently present counsel, who represents all defendants on appeal, appeared at that hearing only on behalf of the DeLorean children. Our record indicates that Ecclesiastes and the DeLorean children had separate counsel at least at the time that responses to the motion for partial summary judgment were due.