## MARTHA FARR, RESPONDENT, v. W. B. SWIGART, ET AL., APPELLANT.

### ILLEGAL LEVY BY CONSTABLE — EVIDENCE — DAMAGES—INSTRUCTIONS—EXCEPTIONS.

1. F. Conveyed to his wife certain property, which was taken by the constable on a writ of execution had under a judgment against F. As the property was conveyed months before the debt of F. was incurred, and before he was indebted to any one, and upon which execution was had, it was not competent to ask the wife of F., while testifying, whether her husband did not convey a large amount of real estate to her at about the same time he conveyed the property in question, when there was no evidence to disclose any fraud in connection with the transfer of the property taken by the constable.

2. Where the lock of a barn is broken, and horses taken by force, against the repeated protests and personal efforts and resistance of the plaintiff, by a constable, it was proper for the court to instruct the jury that, if they found the trespass unlawful, malicious, and perpetrated with a design to oppress the plaintiff, they might give plaintiff punitive damages.

3. Where the testimony shows that the horses were sold on de-

fendant's execution, and that they were bought by one B., and the plaintiff furnished the means with which to buy them, and they were afterwards returned to plaintiff by virtue of such an arrangement, it was not error to instruct the jury that there was no conflict in the testimony that plaintiff did not recover the horses back.

4. The rule that, to take advantage, on appeal, of certain alleged errors in the instructions of the court to the jury, the exceptions to the specific instructions must be taken at the time, and before the verdict of the jury is rendered, so that the attention of the court may be directed to the point in question, cannot be waived by counsel after the verdict of the jury. Such a practice is unfair to the trial court. The people of the state, who pay the general expenses of litigation, are as well interested in the time consumed and expenses incurred attending trials, as are the litigants, and may well interpose objections to any system calculated to delay trials, and attach additional and unnecessary burdens to the state.

(No. 619.   Decided March 26, 1896.   44 P. R. 711.)

Appeal from the judgment of the district court of the Fourth judicial district, Territory of Utah, Hon. H. W. Smith, *Judge.*

Action by Martha D. Farr against W. B. Swigart and the Consolidated Implement Company for a forcible and malicious trespass upon real estate, and for the conversion of personal property.   Judgment for plaintiff. Defendants appeal.   *Affirmed.*

*N. Tanner, Jr.,* and *E. M. Allison,* for appellants.

The court erred in refusing to permit the witness Martha D. Farr to answer the following question upon cross-examination:

"Q.   Mrs. Farr, I will ask you to state if in and about the time this horse was conveyed or given to you in the

month of May, 1891, if your husband did not convey a large amount of real estate to you, real estate outside of this?" and erred in sustaining the objection of the plaintiff's counsel to said question.

The defendants in propounding the above question to plaintiff were seeking to prove that Newton Farr had perpetrated an intentional fraud upon creditors (among whom was the defendant, the Consolidated Implement Company) by making voluntary conveyances of the horse *and other property* to his wife; and in order to prove the gift of the horse to have been fraudulent, fictitious and void, evidence of the voluntary conveyance of other property to her by him at about the same time, in pursuance of a general plan to defraud creditors, was admissible under all of the authorities. *Butler* v. *Watkins*, 13 Wall. 456; *Eames* v. *Kaiser*, 142 U. S. 488; *Cary* v. *Houghtaling*, 1 Hill 311; *Amsden* v. *Manchester*, 40 Barb. 158; *Foster* v. *Hall*, 12 Pick. 88, 99; *Van Kirk* v. *Wilds*, 11 Barb. 520; *Fuller* v. *Acker*, 1 Hill 473; *Taylor* v. *Robinson*, 2 Allen 562; *Castle* v. *Bullard*, 23 How. 172; *Lincoln* v. *Claflin*, 7 Wall. 132; *Winchester* v. *Chester*, 97 Mass. 140; S. C. 12 Allen 611; *Fogg* v. *Griffin*, 2 Allen 1.

The court erred in charging the jury that the plaintiff was entitled to recover exemplary or punitive damages if they found that the trespass was willful, malicious and perpetrated with a design to oppress the plaintiff.

The plaintiff herself testifies:

"I know of no feeling or ill will or malice that Mr. Swigart might have had against me; I never knew him to be an enemy of mine. So far as I know all that Mr. Swigart was doing upon that occasion was done in the performance of his official duty; that is what he said, and I know of nothing to the contrary. I know of no reason why Mr. Swigart should entertain any feeling of ill will towards me; I know of no reason why the Consolidated Implement

Company or Mr. Burton, its manager, should entertain any feeling of ill will towards me; I know Mr. Burton personally, but not very well; I know him slightly; he was the manager of the Consolidated Implement Company at the time of the levy in Ogden; * * * I know of no reason why Mr. Burton, as manager of the Consolidated Implement Company, desired to injure me or why he should entertain any feeling of ill will towards me."

The defendant Swigart testified that he did not have any malice or ill will against the plaintiff; that he had never met her before making the levy upon the horses; that he entertained the best of feelings towards her; and that he went upon those premises in performance of an official duty as constable under the execution then in his hands, and actually believing at the time that he was levying upon the property of Newton Farr. And in addition thereto the court expressly charged the jury:

"If they were his (Newton Farr's) property, there is no claim that the officer did any more than was necessary to seize them, and that he had a right to do."

The instructions therefore upon the subject of punitive damages were given upon hypothetical statements of fact of which there was absolutely no evidence, which fact was practically conceded by the court below in that portion of the charge just quoted. The court ought not to have submitted that question to the jury. It is the province of the *court* to determine whether there is *any* evidence; and if there is a failure of evidence on any material fact or issue, that issue ought not to be submitted to the jury. 2 Thompson on Trials, sec. 2242; *Grall* v. *Tower*, 85 Mo. 249; *U. S.* v. *Breitling*, 20 How. 254; *Chandler* v. *Van Roeder*, 24 How. 227; *Ins. Co.* v. *Baring*, 20 Wall. 162; *Clay Co.* v. *Harvey*, 9 Utah 497; *Snell* v. *Crowe*, 3 Utah 26; *Holt* v. *Pearson*, 41 Pac. Rep. (Utah) 561; *Min. Syndicate & Co.* v. *Fraser*, 130 U. S. 611; *Keyser* v. *Hitz*, 133 U.

S. 138; *R. Co.* v. *Paine*, 119 U. S. 561; *Ins. Co.* v. *Baring*, 20 Wall. 162; *Rosenkranz* v. *Barker*, Ill. 115, 331.

In the case of *Tracey* v. *Swartwout*, 10 Peters 80, the supreme court of the United States said:

"Where a ministerial officer acts in good faith, for an injury done, he is not liable to exemplary damages."

Indeed, the rule is not questioned, that a tort committed by mistake, in good faith, in the assertion of a supposed right, or without any *actual* wrong intention and without such recklessness or negligence as evinces malice or a conscious disregard of the rights of others, will not warrant the giving of punitive damages. 1 Suth. Dam. 724; *Kulb* v. *O'Brien*, 86 Ill. 210; *Hamilton* v. *R. Co.*, 53 N. Y. 25; *Allison* v. *Chandler*, 11 Mich. 542.

*E. T. Hulaniski* and *Rhodes & Tait*, for respondent.

Miner, J.:

This is an action against the defendant Swigart and the Consolidated Implement Company for an alleged forcible and malicious trespass, and for conversion of personal property. The first count in the complaint alleges "that defendants wrongfully, forcibly, and maliciously entered upon the plaintiff's premises, and by force broke open a lock on the door of the barn, and forcibly and maliciously took therefrom one horse of the plaintiff, valued at $250." The second cause of action is the same as the first, except that the horse taken is valued at $200. The answer of defendant Swigart denies all the allegations of the complaint and alleges that, at the time in question, he was a constable, and that he took the horses as such, by virtue of an execution regularly issued upon a judgment, rendered April 5, 1893, in favor of the defendant, the Consolidated Implement Company against Newton Farr, one of the judgment debtors, for $102.38 and costs, and that he sold said horses under and by

virtue of said execution, and that the horses were the property of the said Newton Farr. The answer of the Consolidated Implement Company is a specific denial of the trespass and conversion in both causes of action. Upon the trial, a judgment was rendered in favor of the plaintiff on the first cause of action for $128, and $77 on the second cause of action, amounting to $205, and costs. This appeal is from an order overruling defendants' motion for a new trial, and from the judgment.

It appears from the evidence that the plaintiff was the wife of Newton Farr, and claimed the horses as her separate property, as well as the building from which they were taken by force, and against her objections and personal efforts to prevent it; that the horses were levied upon by defendant Swigart, as constable, to satisfy an execution against Newton Farr, as judgment debtor, on a judgment rendered April 5, 1893. The plaintiff testified that one of the horses, called "Johnny," was given her by her husband in May, 1891, and she had kept it ever since in her barn, adjoining the house which she owned, and had used it ever since; that the house and barn were conveyed to her by her husband, Newton Farr, in January, 1887, and she had lived there continually for seven years with her husband; that on May 24, 1893, she owned the horse called "Johnny," and another horse called "Dan;" that the defendant Swigart took the horses out of the plaintiff's barn by breaking the lock, and was notified at the time that the horses belonged to plaintiff, who tried to prevent him from taking them; that Johnny was valued at $250, and Dan at $150. Upon cross-examination, plaintiff testified that she had paid her husband nothing at the date of the deed for the house and barn, but that he had $1,000 in money of hers at the time; that her husband built the house and barn, and she paid him back for it prior to the commencement of this action;

· that she bought Dan at an auction sale in the fall of 1891, and paid her money for it, which she obtained from her father's estate; that she managed, kept, and used the horses, and permitted her husband to use them, and he acted as her agent in some matters she could not attend to. Thereupon the defendant asked the plaintiff the following questions: "Mrs. Farr, I will ask you to state if, on or about the time this house was conveyed or given to you, in the month of May, 1891, if your husband did not convey a large amount of real estate to you,—real estate outside of this?" This was objected to as being incompetent, irrelevant, and immaterial, and the objection was sustained, and an exception taken, which ruling defendants assign as error.

We do not think the question was proper. The inquiry was concerning a transaction which occurred several months before the debt in question was incurred, or judgment rendered, and at a time, so far as it appeared from the testimony, when Newton Farr was not indebted or in failing circumstances, and when he would have a perfect right to make a gift to his wife if he choose to do so. We recognize the rule that, "where the purchase or sale of property is in issue, evidence of other frauds of like character committed by the same parties, at or near the same time, is admissible. Its admissibility is placed on the same ground that, when transactions of a similar character, executed by the same parties, are closely connected in time, the inference is reasonable that they proceed from the same motive." But the facts in this case do not bring it within that rule. *Kane* v. *Desmond*, 63 Cal. 464; *Voorhis* v. *Michaelis* (Kan.), 25 Pac. 592; *Hussey* v. *Castle*, 41 Cal. 239; *Clark* v. *Killian*, 103 U. S. 766. Section 2528, Comp. Laws Utah 1888, confers upon a married woman the right to all property owned by her before marriage, and that acquired by her afterwards, by purchase, gift,

bequest, devise, or descent, with the rents, issues, and profits thereof, and the same may be held, managed, controlled, and transferred, and in any manner disposed of by her, without any limitation from her husband by reason of marriage. With this right conferred, it would be doing violence to the state for us to hold, as contended for by the appellant, that the gift of the one horse was not followed by an actual and continued change of possession as provided by section 2837, so long as she lived under the same roof with her husband, and kept and owned the horses on the same premises occupied by both. Such a doctrine would destroy the effects of the married woman statute, and compel the wife to leave her husband, and take her property with her, in order to be protected from an execution levied against her husband by a creditor who might afterwards assert the illegality of the transfer to her because of there being no actual and continued change of possession. *Culmer* v. *Wilson*, 13 Utah 129, 44 Pac. 833. Witness further testified that she had no knowledge, in May, 1891, nor at any time prior to the suit, that her husband was in failing circumstances. The first she knew that Mr. Farr was in debt was when the execution was levied.

Appellants assign error upon the following instructions of the court to the jury on the subject of punitive damages: "Now, in addition to these two, which are deemed actual elements of damage to the plaintiff, there is a third which you may consider if you find that the trespass was willful, was malicious, and was perpetrated with a design to oppress the plaintiff. In addition to the actual damage she has sustained, you may give such further damages by way of punishing the parties as, under the circumstances, you think just." The court further stated to the jury, in this connection, in explanation of this part of the charge excepted to: "But you are not at

liberty to give damages on this latter ground unless you find that the trespass was willful and was malicious; and by malice is meant a desire to annoy, to vex, and to oppress another person. If the officer was simply mistaken in his duty, and acted in good faith, he is not liable; nor is the other defendant liable for any damages of this kind." The court further instructed the jury as follows: "Now, if these horses were the property of Newton Farr, or if they belonged to him, or were, under the circumstances which I have already detailed to you, liable for his debt, the officer had the right to go there and take them, and for that purpose he had the right to break open a lock of any building or place where they might be found; so that, you see, if the horses belonged to Newton Farr, upon the uncontradicted testimony, the plaintiff cannot recover. If they were his property, there is no claim that the officer did any more than what was necessary to seize them, and that he had a right to do. If, on the other hand, the horses belonged to the wife, and were not liable for Newton Farr's debts, then the officer was a trespasser all the way through from the beginning, and is liable for everything that occurred there. You will determine the facts from the evidence as to this question." "It is a well-established principle of the common law that, in actions of trespass, and all actions on the case for torts, a jury may inflict what are called punitive, exemplary, or vindictive damages upon a defendant, having in view the enormity of his offense, rather than the measure of compensation to the plaintiff." In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit juries to add the measured compensation of the plaintiff, which he would have been entitled to recover had the injury been inflicted without design or intention, something further, by way of punishment or example, which has sometimes

been called "smart money." This has always been left to
the discretion of the jury, as the degree of punishment to
be thus inflicted must depend on the peculiar circum-
stances of each case. "These damages are allowed when
a wrongful act is done with a bad motive, or so recklessly
as to imply a disregard of social obligations, or where
there is a negligence so gross as to amount to misconduct
and recklessness." Suth. Dam. pp. 719, 720, 724. The
instructions given were carefully guarded by the court,
and left dependent upon the ownership and the facts as
the jury should find them from the evidence. The evi-
dence and the facts, as shown by the record, although
somewhat contradictory, present a case from which a
wrongful act might be assumed to be done by a wrong
motive, and with a reckless disregard of the rights of the
plaintiff. Taking the charge altogether, we discover no
reversible error in that part excepted to.

The evidence shows that the horses were valued at
from $150 to $400, and the damages recovered were $205.
It appears that the lock of the barn was broken; and the
horses taken by force, against the repeated protests and
personal efforts and resistance of the plaintiff to retain
them. She had repeatedly informed the defendants that
they were her property. One of the horses was paid for
from money she received from her father's estate, and the
other one was given to her by her husband long before he
was shown to be indebted to any one. The jury rendered
a verdict for the plaintiff in the sum of $205, as covering
the damages sued for,—a sum certainly not dispropor-
tionate to the value of the horses as shown by the proof.

Objections are urged to that part of the court's charge
wherein it is stated "that there is no conflict in the testi-
mony that plaintiff did not recover the horses back. She
was under no obligations to receive them when brought
back. * * * But, if she did, in fact, receive them

back, then she is only entitled to recover for their loss or injury to them while they were out of her possession." The testimony shows that the horses were sold on defendants' execution, and that they were bought by Mr. Browning, and that plaintiff furnished the means with which to buy them, and that they were afterwards returned to her by virtue of such arrangement, but were not returned by the defendants. So that, technically speaking, the charge was correct. She did not receive them back from the defendants.

This brings us to another consideration of a question embraced in the respondent's brief, which is that the abstract fails to show that this alleged error, and those which follow, were excepted to, or that the court's attention was in any manner called to the alleged errors in the charge at the time of the trial, until long after the verdict was rendered, when a stipulation was entered into by the attorneys, without the concurrence of the court, that an exception might be made thereto. We think this point is well taken. The people of the state, who pay the general expenses of litigation, are as well interested in the time consumed and expenses incurred attending trials as are the litigants, and may well interpose an objection to any system calculated to delay the progress of trials, or attach additional and unnecessary burdens to the state. Had the alleged errors in the charge been called to the attention of the court at the time, and before the verdict was rendered, the court would doubtless have corrected any inaccuracies that might have accrued therein during the hurry and perplexities of the trial. This court held, in *Marks* v. *Tompkins*, 7 Utah 425, 27 Pac. 6, and has repeatedly held since that time, that "exceptions to the charge given, or the refusal to charge as requested, should be specific enough to show what parts of it are regarded as erroneous, or how it injuriously affects the

rights of the party complaining; and these exceptions should be made and pointed out before the verdict of the jury is reached, so that the judge may have an opportunity to correct any errors which he may have inadvertently fallen into during the hurry and perplexities of the trial." See *People* v. *Berlin,* 10 Utah 39, 36 Pac. 199 (since affirmed, 10 Utah 204, 37 Pac. 330); *People* v. *Hart,* 10 Utah 204, 37 Pac. 330; *Lowe* v. *Salt Lake City,* 13 Utah 91, 44 Pac. 1050; *Geay* v. *People,* 22 Mich. 220; *U. S.* v. *Gough,* 8 Utah 428, 32 Pac. 695; *Nelson* v. *Brixen,* 7 Utah 454, 27 Pac. 978. This having been the uniform holding of this court, we have determined not to depart from the rule, and must hold that exceptions taken to the charge after the verdict of the jury is rendered, and after their discharge from the case, cannot be considered on appeal. With this view of the case, it is unnecessary to consider the other questions presented. The judgment of the court below is affirmed.

BARTCH, J., concurs.

ZANE, C. J.:

I concur in the affirmance of the judgment appealed from, but I am of the opinion that defendants' exceptions to the charge should have been considered by this court, because counsel for both parties, with the consent of the court who tried the case, stipulated that they might be taken after the verdict.