2008 UT App 40

**Andrew GALLEGOS and Joan Gallegos, Plaintiffs and Appellees,**

v.

**James LLOYD, Julie Lloyd, et al., Defendants and Appellants.**

No. 20061135–CA.

Court of Appeals of Utah.

Feb. 14, 2008.

T. Richard Davis, Salt Lake City, for Appellants.

George A. Hunt and Stephen Hester, Salt Lake City, for Appellees.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Appellants James Lloyd and Julie Lloyd (the Lloyds) appeal the trial court's award of attorney fees to Appellees Andrew Gallegos and Joan Gallegos (the Gallegoses). We reverse.

## BACKGROUND

¶ 2 On August 6, 2004, the Gallegoses filed a complaint against the Lloyds for trespass, negligence, and quiet title, alleging that the Lloyds built their home on property that belonged to the Gallegoses. The Lloyds conceded that their home encroached upon the Gallegoses' property; however, they disputed "the nature and amount[ ] of damages." After discovery and about six weeks prior to trial, the trial court granted the Gallegoses' motion to amend their complaint to make an additional claim for punitive damages against the Lloyds based on allegations that the Lloyds were reckless in building their home and willfully disregarded the Gallegoses' property rights.

¶ 3 After a two-day bench trial, the court awarded compensatory damages to the Gallegoses in the amount of $72,053.31. The trial court also concluded that "[n]o award of punitive damages should be made in this matter." Finally, on its own motion, the trial court determined that the Gallegoses were entitled to attorney fees either as consequential damages or, alternatively, pursuant to

Utah Code section 78–27–56 because "the Lloyds' defense ... was without merit and not asserted in good faith." A final judgment memorializing this ruling and the court's findings of fact and conclusions of law were entered on July 19, 2006. On that same day, the Gallegoses moved for attorney fees and costs pursuant to rules 73(a) and 54(d) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 73(a), 54(d), and based on the trial court's bench ruling and subsequent judgment.

¶ 4 During a hearing on November 2, 2006, the trial court granted the Gallegoses' motion for attorney fees and costs. And on November 16, 2006, the court entered a Supplemental Judgment for Attorneys Fees and Costs, which awarded $56,798 in attorney fees and $9398.17 in costs to the Gallegoses. The Lloyds now appeal the supplemental judgment awarding attorney fees to the Gallegoses.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 The Lloyds first argue that the trial court erred when it awarded attorney fees as consequential damages to the Gallegoses. Generally, "[w]hether attorney fees should be awarded is a legal issue that we review for correctness." *Gardiner v. York,* 2006 UT App 496, ¶ 5, 153 P.3d 791 (citing *Valcarce v. Fitzgerald,* 961 P.2d 305, 315 (Utah 1998)).

¶ 6 The Lloyds' second argument is that the trial court erred when it awarded attorney fees to the Gallegoses under Utah Code section 78–27–56. *See* Utah Code Ann. § 78–27–56(1) (2002). We review a trial court's grant of attorney fees under section 78–27–56 as a mixed question of law and fact. Before awarding attorney fees to a plaintiff under section 78–27–56, the trial court must conclude that the defendant's defense "was without merit," *id.,* and we review this legal conclusion for correctness. *See Coalville City v. Lundgren,* 930 P.2d 1206, 1211 (Utah Ct.App.1997). In addition, the trial court must make a factual finding—based on the defendant's subjective intent—that the de-

fendant did "not br[ing] or assert[the defense] in good faith," Utah Code Ann. § 78–27–56(1), which we review under a clearly erroneous standard. *See Still Standing Stable, LLC v. Allen,* 2005 UT 46, ¶ 8, 122 P.3d 556; *see also Valcarce,* 961 P.2d at 316 ("The wide variety of circumstances that might support a finding of such intent requires that we give a trial court relatively broad discretion in concluding that bad faith has been shown.").

## ANALYSIS

### I. Attorney Fees as Consequential Damages

¶ 7 The Lloyds claim that, in Utah, a party cannot recover attorney fees as consequential damages in a tort case unless provided for by statute. To decide otherwise in this case, they argue, would be contrary to the rule that Utah courts have consistently followed. *See Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301, 1318 (10th Cir.2000). We agree.

¶ 8 Utah follows the traditional American rule, which states that "attorney fees are not recoverable by a prevailing party unless authorized by statute or contract." *Faust v. KAI Techs.,* 2000 UT 82, ¶ 17, 15 P.3d 1266. There are, however, exceptions to this general rule. *See, e.g., Utahns For Better Dental Health–Davis, Inc. v. Rawlings,* 2007 UT 97, ¶ 5, 593 Utah Adv. Rep. 36, 175 P.3d 1036 (private attorney general doctrine); *Lewiston State Bank v. Greenline Equip., LLC,* 2006 UT App 446, ¶¶ 21–22, 147 P.3d 951 (third-party tort rule); *Macris & Assocs., Inc. v. Neways, Inc.,* 2006 UT App 33, ¶ 4 n. 1, 131 P.3d 263 (same); *see also, e.g., Heslop v. Bank of Utah,* 839 P.2d 828, 840–41 (Utah 1992) (employer's breach of the covenant of good faith and fair dealing); *see also Macris & Assocs., Inc. v. Neways, Inc.,* 2002 UT App 406, ¶ 13 n. 8, 60 P.3d 1176 (listing additional exceptions). The present case does not fall under any of the previously-recognized exceptions to the general rule against awarding attorney fees in tort cases.[1]

---

1. The Gallegoses compare this situation to the breach of a warranty deed provision. However, the situations are distinguishable. A warranty deed case, in the words of the Gallegoses' own counsel, is "a quasi-contractual type case rather than a tort case." Additionally, the warranty

*See Gardiner,* 2006 UT App 496, ¶¶ 7–8, 153 P.3d 791 (" 'The award of attorney fees as consequential damages, outside the context of statutory and contractual authorization, should be limited to … two situations …: insurance contracts and the third-party exception.' " (omissions in original) (emphasis omitted) (quoting *Collier v. Heinz,* 827 P.2d 982, 984 (Utah Ct.App.1992))). The Gallegoses ask us to adopt a new exception, an invitation we decline. Therefore, we hold that the trial court erred in awarding attorney fees as consequential damages.

## II. Attorney Fees Under Section 78–27–56(1)

■ ¶ 9 As an alternative to awarding attorney fees in the form of consequential damages, the trial court awarded attorney fees to the Gallegoses under Utah Code section 78–27–56. Section 78–27–56(1) states: "In civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith…." Utah Code Ann. § 78–27–56(1). "According to the plain language of section 78–27–56, three requirements must be met before the court shall award attorney fees: (1) the party must prevail, (2) the claim asserted by the opposing party must be without merit, and (3) the claim must not be brought or asserted in good faith." *Hermes Assocs. v. Park's Sportsman,* 813 P.2d 1221, 1225 (Utah Ct. App.1991) (citing *Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983)). We address each of these elements in turn.

### A. The Gallegoses Were the Prevailing Party on Compensatory but Not Punitive Damages

¶ 10 A substantial portion of the trial was focused on evidence concerning the Lloyds'

deed cases that the Gallegoses cite involve litigation expenses incurred against third parties as a result of the grantor's failure ·to deliver clear title. *See, e.g., Creason v. Peterson,* 24 Utah 2d 305, 470 P.2d 403, 403, 405–06 (1970) (awarding attorney fees incurred to obtain quitclaim deed from third party); *Van Cott v. Jacklin,* 63 Utah 412, 226 P. 460, 460, 463 (1924) (awarding attorney fees incurred in suit against third party for possession of land covered by warranty deed).

state of mind during the construction of the encroaching home. While the Lloyds claimed that the trespass was a mistake caused by their reliance on others, the Gallegoses asserted that the Lloyds willfully built on their property to improve their view, driveway grade, and cost of construction. The Lloyds denied that their conduct was willful, and thus argued that punitive damages were not warranted. *See Hatanaka v. Struhs,* 738 P.2d 1052, 1054 (Utah Ct.App. 1987) ("[B]efore punitive damages may be awarded [in a trespass case], the plaintiff must prove conduct that is willful and malicious, or that manifests a knowing and reckless indifference and disregard toward the rights of others." (internal quotation marks omitted)). According to the Gallegoses, the Lloyds contested "the intentional element of the Gallegos[es]' trespass claim," and therefore proof of intent was required to prevail on both their claim for punitive damages and their claim for compensatory damages for trespass. We disagree.

■ ¶ 11 Damages are awarded on a successful trespass claim whether or not the defendant intentionally entered the plaintiff's property. *See generally Walker Drug Co. v. La Sal Oil Co.,* 972 P.2d 1238, 1243 (Utah 1998) ("The essential element of trespass is physical invasion of the land…."). It was therefore necessary for the Lloyds to contest the intent element to prevail on the issue of punitive damages, while intent was irrelevant to the underlying trespass claim. *See Farr v. Swigart,* 13 Utah 150, 44 P. 711, 713 (1896) ("In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit juries to add [to] the measured compensation of the plaintiff, *which he would have been entitled to recover had the injury been inflicted without design or intention,* something further, by way of

*See generally Gardiner v. York,* 2006 UT App 496, ¶ 9, 153 P.3d 791 ("[T]he third-party litigation exception allows recovery of attorney fees as consequential damages, but only in the limited situation where the defendant's breach of contract foreseeably caused the plaintiff to incur attorney fees through litigation with a third party." (internal quotation marks omitted) (emphasis omitted)).

punishment or example . . . ." (emphasis added)). The Restatement of Torts explains this concept as follows:

> In order to be liable for a trespass on land under the rule stated in § 158, it is necessary only that the actor intentionally be upon any part of the land in question. It is not necessary that he intend to invade the possessor's interest in the exclusive possession of his land and, therefore, that he know his entry to be an intrusion.

Restatement (Second) of Torts § 164 cmt. a (1965).[2]

¶ 12 The trial court ruled that the Gallegoses did not meet their burden of proving willfulness by clear and convincing evidence.[3] *See Mueller v. Allen,* 2005 UT App 477, ¶ 39, 128 P.3d 18 ("Under Utah law, punitive damages can be awarded only if 'it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.' " (quoting Utah Code Ann. § 78–18–1(1)(a) (Supp.2005))). Therefore, the trial court dismissed the claim for punitive damages and the Gallegoses did not prevail on that claim.[4]

¶ 13 As explained above, the Lloyds conceded trespass but tried the issue of the appropriate amount of damages. Before trial, the Gallegoses claimed damages of $127,999.36 and the Lloyds admitted damages of $10,607. Ultimately, the trial court awarded $72,053.31 in damages to the Gallegoses, a figure slightly more than halfway between the positions asserted by the parties. The trial court also concluded that the Gallegoses were the prevailing parties at trial and awarded them attorney fees under Utah Code section 78–27–56. *See* Utah Code Ann. § 78–27–56(1) (2002). Trial courts apply a "flexible and reasoned" approach to the determination of who prevailed at trial. *See A.K. & R. Whipple Plumbing & Heating v. Guy,* 2004 UT 47, ¶ 11, 94 P.3d 270; *Mountain States Broad. Co. v. Neale,* 783 P.2d 551, 557 (Utah Ct.App.1989). Furthermore, we defer to the trial court's application of that approach. *See Lunceford v. Lunceford,* 2006 UT App 266, ¶ 10, 139 P.3d 1073 ("[T]he district court's determination as to the identity of the prevailing party is reviewed for abuse of discretion."). Consequently, we affirm the trial court's conclusion that the Gallegoses prevailed on the compensatory damages claim.

¶ 14 Although the Gallegoses were successful on part, but not all, of their damages theory, they may recover attorney fees if they otherwise satisfy the remaining elements of section 78–27–56. *See* Utah Code Ann. § 78–27–56(1); *Ault v. Holden,* 2002 UT 33, ¶ 48, 44 P.3d 781 ("To be a prevailing party, a party must obtain at least some relief on the merits of the party's claim or claims." (internal quotation marks omitted)); *Valcarce v. Fitzgerald,* 961 P.2d 305, 317–19 (Utah 1998) ("[A] trial court's award of attorney fees must distinguish between those fees incurred in connection with successful and unsuccessful claims, as must the evidence submitted by the prevailing party, or the reviewing court will be precluded from making an independent determination."); *Coal-*

---

**2.** The Restatement's illustrations are also instructive, for example:

> A employs a surveyor of recognized ability to make a survey of his land. The survey shows that a particular strip of land is within his boundaries. In consequence, A clears this land of timber and prepares it for cultivation. In fact, the survey is mistaken and the strip in question is part of the tract owned by his neighbor, B. A is subject to liability to B. Restatement (Second) of Torts § 164 illus. 3 (1965).

**3.** Indeed, the trial court alluded to the Lloyds' success in defending against the Gallegoses' claim in its ruling from the bench: "I don't know how much in terms of punitive damages you've saved your client, Mr. Davis, but conceivably a lot by your arguments today. I think they've been good arguments and they've been persuasive on that issue . . . ."

**4.** Because we conclude that the Gallegoses did not prevail on their punitive damages claim, we need not address whether the Lloyds' defense of that claim lacked merit or was brought in bad faith. *See* Utah Code Ann. § 78–27–56(1) (2002); *Hermes Assocs. v. Park's Sportsman,* 813 P.2d 1221, 1225 (Utah Ct.App.1991) ("Park was not 'the prevailing party' at any stage in the litigation; therefore, we do not need to consider whether the remaining requirements[, without merit and bad faith,] were met.").

*ville City v. Lundgren,* 930 P.2d 1206, 1211 (Utah Ct.App.1997) (stating that defendant's success on a collateral issue did not preclude an award of attorney fees under section 78–27–56). We therefore consider the bad faith and without merit elements of the statute.

## B. The Lloyds Acted in Bad Faith

¶ 15 Before the Gallegoses, as the prevailing parties, may recover attorney fees under section 78–27–56, the trial court must make a factual finding that the Lloyds asserted their defense in bad faith. *See Cady v. Johnson,* 671 P.2d 149, 151–52 (Utah 1983) (explaining that the terms "bad faith" and "lack of good faith," for the purposes of section 78–27–56, are synonymous). A finding of bad faith must be based on at least one of the following three factors: "(i) The party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others." *Valcarce,* 961 P.2d at 316 (citing *Cady,* 671 P.2d at 151). We defer to the trial court's factual finding of bad faith unless it is clearly erroneous. *See Topik v. Thurber,* 739 P.2d 1101, 1104 & n. 5 (Utah 1987); *Jeschke v. Willis,* 811 P.2d 202, 204 (Utah Ct.App. 1991).

¶ 16 Here, the Gallegoses asserted that the Lloyds intentionally built their house on the Gallegoses' property. Although the trial court was unable to conclude that the Lloyds had willfully built on the Gallegoses' property by the clear and convincing standard of proof necessary to award punitive damages, it was "by the slimmest of margin" that it did not

make such a finding. Indeed, the trial court did find intentional conduct by a preponderance of the evidence, stating:

> I see a difference in the standard between punitive damages and a bad faith finding, and I think the punitive damages requires clear and convincing, I found before, and I would reiterate that I didn't feel the evidence rose to that level. *However, I did feel that the evidence rose to a preponderance level* and that would be adequate in my opinion ... [to] justify the award of damages for bad faith in the litigation process.

(Emphasis added.)

¶ 17 The trial court based its finding—that the Lloyds brought the defense to the action in bad faith—on its belief that Mr. Lloyd "came to court and testified, in [its] opinion, totally without credibility." [5] Because Mr. Lloyd "lacked an honest belief in the propriety of the activities in question," *see Valcarce,* 961 P.2d at 316, the trial court found that the bad faith element of section 78–27–56(1) was met.[6] We agree that the trial court's belief that Mr. Lloyd testified untruthfully is sufficient to support that finding and we will not disturb it on appeal. *See Wardley Better Homes & Gardens v. Cannon,* 2002 UT 99, ¶ 29, 61 P.3d 1009 ("Wardley automatically lacked an honest belief in the propriety of bringing a suit to collect a commission under a fraudulently-obtained listing agreement."); *Topik,* 739 P.2d at 1104 (noting that defendant's false testimony claiming that his signature was a forgery supported the finding that his defense to enforcement of a letter agreement was brought in bad faith).

---

**5.** The Lloyds also claim that the trial court erroneously based its bad faith finding on their prelitigation conduct. *See Faust v. KAI Techs.,* 2000 UT 82, ¶ 16, 15 P.3d 1266 ("It is not enough that [defendant] did not promptly pay ... the amounts it acknowledged were owing in the settlement letter or that [defendant] may have acted in bad faith at times in the settlement negotiations. [Section 78–27–56(1)] simply does not extend to such conduct."); *see also Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301, 1318 (10th Cir.2000) ("We conclude that Utah would follow the general rule, rather than substantially abridge the American rule by permitting its courts to award attorney's fees for bad faith conduct not related to the litigation process it-

self."). However, the trial court specifically found that "[Mr. Lloyd's] conduct *after the litigation commenced* was also in bad faith.... [H]e came to court and testified, in [its] opinion, *totally without credibility.*" (Emphasis added.) Consequently, we do not address the issue of whether prelitigation conduct could ever satisfy the bad faith prong of section 78–27–56(1).

**6.** We note that there is no indication in the transcript or the trial court's findings of fact and conclusions of law that counsel for the Lloyds had any complicity in his client's decision to testify falsely.

## C. The Lloyds' Defense to Compensatory Damages Was Not Without Merit

¶ 18 The most difficult part of our analysis focuses on the issue of whether Mr. Lloyd's untruthful testimony at trial also satisfies section 78–27–56's requirement that the defense be without merit.[7] While the Gallegoses contend that it does, the Lloyds argue that their defense cannot be without merit because it was successful in reducing the compensatory damages claimed by the Gallegoses by over forty percent. The Lloyds defended against the amounts the Gallegoses claimed in compensatory damages by asserting that such amounts were "inflated" and caused by a failure to mitigate. The trial court partially agreed with this defense, stating that not all of the storage fees were "legitimate" and that some of the architectural drawings were not "justified." Typically, mitigation of damages "is a legitimate issue that can hardly be characterized as frivolous or as having no basis in law or fact." *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 534 (Utah 1993).

¶ 19 A meritless claim is defined as "frivolous," or "of little weight or importance having no basis in law or fact." *Cady*, 671 P.2d at 151 (internal quotation marks omitted). The Lloyds argue that their defenses did not lack merit because they "fully or substantially succeeded in [them]." We agree that the Lloyds were partially successful in their defense, significantly reducing the amount of damages awarded to the Gallegoses. Nevertheless, the Gallegoses argue that the trial court's finding that Mr. Lloyd's trial testimony was "totally without credibility" is enough to satisfy both the bad faith and the without merit requirements of the statute. Under the facts of this case, we disagree.

¶ 20 Prior decisions from the Utah Supreme Court suggest that the use of false testimony may, under some circumstances, be enough to support a finding that a defense was asserted without merit. In *Topik v. Thurber*, 739 P.2d 1101 (Utah 1987), the Utah Supreme Court upheld an award of attorney fees under section 78–27–56(1). *See*

*id.* at 1104. The supreme court explained that the trial court's finding "that defendant attempted to avoid liability by testifying falsely" was sufficiently supported, and upheld the award of attorney fees under section 78–27–56 without distinguishing between lack of merit and bad faith. *See id.*

¶ 21 Subsequently, in *Valcarce v. Fitzgerald*, 961 P.2d 305 (Utah 1998), the Utah Supreme Court specifically recognized that "the Valcarces' claims may have had some basis in law." *Id.* at 315. Nevertheless, it held that the defense was meritless, stating:

> We conclude that the trial court properly found the [defendant]s' claims and defenses to be meritless.... [T]he trial court found [the defendant's] testimony to be "incredible".... We held in *Topik v. Thurber* that *a finding that a party has attempted to avoid liability by testifying falsely will support a decision to award attorney fees* if combined with a finding of bad faith. Thus, the case makes clear that *testifying falsely is not a legitimate mode of defense.* Because his defense was without merit, [the defendant] can be held responsible for those attorney fees that were incurred after he was joined as a party if we find that his actions were taken in bad faith.

*Id.* (citation omitted) (second and third emphases added); *see also Wardley*, 2002 UT 99, ¶ 30, 61 P.3d 1009 (concluding that a claim "clearly had no legal basis for recovery" because it "was based on fraudulently-altered [documents]" (internal quotation marks omitted)); *Jeschke v. Willis*, 811 P.2d 202, 204 (Utah Ct.App.1991) (determining that plaintiff's purposeful misrepresentations evidence both that the action was brought in bad faith and that it was without merit).

¶ 22 The Utah Supreme Court has since cautioned against conflating the issues of merit and bad faith. *See, e.g., Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶¶ 10, 16–17, 122 P.3d 556; *In re Sonnenreich*, 2004 UT 3, ¶ 49, 86 P.3d 712. Consequently, we examine the without merit element of section

---

7. The trial court based both its finding that the defense to the action was brought in bad faith and its conclusion that the defense was without

merit on the fact that Mr. Lloyd's testimony was "totally without credibility."

78–27–56 independently of the bad faith requirement.

¶ 23 Here, the trial court specifically found that the Lloyds' testimony regarding their intent was not credible:

[Their] assertion ... that they were not aware of any potential encroachment onto Lot 102, is not credible. Likewise, [their] assertion that they relied upon other professionals to properly stake their[ ] home or notify them that their home was not located according to the Lot 106 Site Plan, is not credible.

The Lloyds offered this incredible testimony as part of their defense to the Gallegoses' claim for punitive damages.[8] The challenges to the amount of compensatory damages requested by the Gallegoses were not dependent upon the Lloyds' state of mind. Thus, the false testimony was actually related to the punitive damages claim on which the Lloyds prevailed and not to the amount of actual damages caused to the Gallegoses as a result of the trespass.

¶ 24 The prior Utah cases that have found untruthful testimony enough to make a defense without merit each involved incredible testimony directly related to liability. In *Valcarce*, the trial court concluded that Mr. Valcarce testified falsely that he did not damage the irrigation canal or dams that were the subject of the Fitzgeralds' claim for damages resulting from the Valcarces' interference with their water rights. *See* 961 P.2d at 315. Mr. Valcarce's defense to the interference claim was that he did not do it, yet numerous witnesses testified to seeing him removing damming devices and plowing dirt into the canal. *See id.* at 310. The trial court concluded that the Valcarces' defense was based on an untruthful denial. *See id.* at 315. Thus the defense to the damages claim, which was false, was without merit. *See id.* Likewise, in *Jeschke v. Willis*, 811 P.2d 202 (Utah Ct.App.1991), the plaintiff lied about prior and subsequent accidents as well as the cause of his injuries. The untruthful state-

ments went directly to his personal injury claim, thereby rendering it without merit. *Id.* at 204; *see also Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 30, 61 P.3d 1009 (concluding that plaintiff's claim, which was entirely based on a fraudulently-altered document, lacked merit); *Topik*, 739 P.2d at 1102, 1104 (affirming the trial court's finding that defendant testified untruthfully, which testimony related directly to the claim that defendant agreed but failed to honor an assignment of personal injury proceeds).

¶ 25 Unlike these cases, the incredible testimony offered by the Lloyds was not relevant to the claim on which the Gallegoses prevailed.[9] The defenses offered by the Lloyds to the Gallegoses' claim for compensatory damages were partially successful and resulted in a significant reduction in the amount of damages awarded. Although we hold that the trial court did not exceed its discretion in finding that the Lloyds acted in bad faith by offering false testimony for any purpose, we hold that the trial court was not correct in ruling that the defense against the compensatory damages claimed was without merit.

## CONCLUSION

¶ 26 We conclude that the trial court erred in awarding attorney fees as consequential damages. The Gallegoses did not prevail on their claim for punitive damages, and therefore the trial court's award of attorney fees under Utah Code section 78–27–56(1) should not have included fees related to that issue. Although the trial court did not exceed its discretion in finding that the Lloyds acted in bad faith, it was incorrect in awarding the Gallegoses section 78–27–56(1) attorney fees incurred in pursuing compensatory damages caused by the Lloyds' trespass because their defenses to those damages were not without merit. Each party shall bear its own attorney fees incurred in this appeal.

¶ 27 Reversed.

---

8. As we have discussed, once the Lloyds admitted that their home encroached on the Gallegoses' property, the only issue before the court was the proper amount of damages.

9. To recover attorney fees under section 78–27–56, the movant must be the "prevailing party." *See* Utah Code Ann. § 78–27–56(1) (2002); *Hermes Assocs. v. Park's Sportsman*, 813 P.2d 1221, 1225 (Utah Ct.App.1991).

¶28 WE CONCUR: RUSSELL W. BENCH and JAMES Z. DAVIS, Judges.